## JAMES PARKS BRADLEY AND JANE L. BRADLEY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64067. Filed June 25, 1958.

---

*Granville S. Borden, Esq.*, for the petitioners.

*Joseph O. Greaves, Esq.*, and *Thomas M. Mather, Esq.*, for the respondent.

### OPINION.

TIETJENS, *Judge:* The Commissioner determined the following deficiencies in income tax against petitioners:

| Year | Deficiency |
| --- | --- |
| 1952 | $3, 254. 03 |
| 1953 | 3, 501. 28 |
| 1954 | 469. 31 |

The several questions for decision are as follows: (1) Whether the rental value of the residence occupied rent free by petitioner's former wife in the taxable years constitutes periodic alimony payments deductible by him within the meaning of sections 22 (k) and 23 (u) of the Internal Revenue Code of 1939 and sections 71 and 215 of the Internal Revenue Code of 1954; (2) if not, whether petitioner is entitled to deduct depreciation on the residence in the taxable years; (3) whether principal payments made by petitioner on an encumbrance on the residence are periodic payments of alimony under the above-mentioned sections; and (4) whether premiums paid by petitioner on certain life insurance policies are deductible under those sections.

All of the facts are stipulated, are so found, and the stipulation together with the pertinent exhibits are incorporated herein by this reference.

James Parks Bradley and Jane L. Bradley are husband and wife. They filed joint income tax returns for the taxable years on a cash basis with the district director of internal revenue, San Francisco, California.

James was formerly married to Frances D. Bradley from whom he was divorced in 1946. James and Frances entered into a property settlement agreement on May 14, 1946, which was subsequently incorporated and approved in the divorce decree.

The property settlement agreement provided, *inter alia*—

WHEREAS, the parties hereto now are and for many years last past have been husband and wife; and

WHEREAS, the parties hereto have and own certain property both community and separate; and

WHEREAS, the parties desire to agree to an immediate and permanent separation and to settle and determine their respective property rights, and in that behalf to adjust all rights and claims of each as against the separate property of the other and as against the community property of both, and all claims of each of the parties hereto against the other; and

WHEREAS, the parties desire to provide for the care and custody of their minor children, MARY LOUISE BRADLEY and HEWITT DAVENPORT BRADLEY; and

WHEREAS, it is understood and agreed by and between the parties hereto that this agreement is intended as a Property Settlement Agreement and to refer only to property rights, and that any cause of action that either of said parties has or may have against the other is not intended to be and is not condoned by this agreement, nor is this agreement to be construed as a bar to any action for divorce that either party may have against the other,

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

3–Second Party [James] hereby agrees to maintain and pay all premiums on the following policies of life insurance now naming First Party as beneficiary thereof, and Second Party agrees to continue to pay the premiums on said policies and not to change the beneficiary of said policies so long as First Party shall live:

| Policy No. | Company | Amount |
|---|---|---|
| 8042277 | Prudential Insurance Co | $10,000.00 |
| Various | Travelers Insurance Co | 5,000.00 |
| 600540 | Lincoln Natl. Life Ins. Co | 25,000.00 |
| 600541 | Lincoln Natl. Life Ins. Co | 25,000.00 |

4–It is agreed that First Party [Frances] shall have the right during her lifetime to occupy the home at No. 2750 Scott Street in San Francisco without payment of any rental therefor, provided that she shall pay all expenses of maintenance and repairs. Second Party agrees that he will pay all taxes and insurance on said home so long as he is financially able to do so, provided, however, that in the event that the parties hereto shall be divorced and First Party shall subsequently remarry, First Party shall continue to have the right to occupy said home without payment of any rental therefor, but she shall be obliged to pay the amount of all taxes and insurance on said home. In the event that First Party elects to cease to occupy said home as a residence, it is agreed that said property shall be sold at reasonable market value. The proceeds thereof, after all taxes, on any such sale shall belong to and be paid over in equal shares to the parties hereto, their successors or assigns. With respect to said home Second Party specifically agrees that until the sale of said property as herein above provided, he will continue as long as he is financially able to do so, to make all payments, when due, on principal and interest on the loan secured by deed of trust on said home until such time as said loan has been paid off in full. Second Party agrees that he will not further encumber said home in any manner whatsoever.

The agreement also contained provisions whereby James agreed to pay over to Frances each year a specified percentage of his income.

Record title to the premises located at 2750 Scott Street, San Fran-

cisco, at the time of the divorce, during the tax years involved, and as of March 1958, was and is vested in James.

In accordance with the terms of the property agreement petitioner removed his personal possessions from the residence and left Frances in sole possession of the premises. In 1948 Frances married Glenn Lane and during the years 1952, 1953, and 1954 they resided in the house. They paid no rent for the use of these premises. No rental income from this source was reported by James in his income tax returns.

The balance due on a loan made by the San Francisco Bank on the property located at 2750 Scott Street as of June 24, 1946, the date of the divorce, was in the amount of $14,747.68. On June 10, 1947, the amount of the loan was increased to $20,000 and a renewal note was signed by James. On August 22, 1948, the then unpaid balance on the note was raised to $25,000 and James again signed a new renewal note for this amount. Again on December 19, 1949, the unpaid amount of the note was increased to $30,000 and again James signed a new renewal note. A consent to each increase was secured from Frances. However, she was not a cosigner on any of the renewal notes. The following table shows the principal and interest payments made by the petitioner on the said loan in the years 1952, 1953, and 1954:

| Year | Interest | Principal |
|------|----------|-----------|
| 1952 | $1,304.97 | $1,695.03 |
| 1953 | 1,218.24 | 1,781.76 |
| 1954 | 1,127.08 | 1,872.92 |

At the time of the divorce decree, the fair market value of the building located at 2750 Scott Street, San Francisco, was $60,000 and at that time the building had a useful life of 25 years. Its fair rental value is stipulated to be $500 per month during the taxable years.

During the calendar years 1952, 1953, and 1954 petitioner paid premiums on the policies of life insurance referred to above, in the following respective amounts: $1,167.50, $1,164.20, and $1,155.30. These policies were ordinary life insurance as distinguished from term insurance or endowment policies.

The original beneficiary provision on policy No. 8–042–277 issued by Prudential Insurance Company provided in material part as follows:

If this Policy matures at death, the proceeds then payable in accordance with the terms of the Policy shall be payable forthwith to Frances D. Bradley, Beneficiary, wife of the Insured, if living, otherwise in equal shares to the living children, if any, of the Insured, Beneficiaries, otherwise to the executors or administrators of the Insured.

On January 7, 1947, the said policy was amended under the "Provisions as to Rights Under Policy" as follows:

This Policy is hereby amended to provide that the following right(s) under the Policy, viz.: to remove or replace Frances D. Bradley, former wife of the Insured, as Beneficiary, to assign the Policy against the interest of said Beneficiary except as security for a loan made by the Company to pay premiums under the Policy, to designate settlement under the Provisions as to Modes of Settlement or to revoke any such designation, to obtain cash loans, cash surrender values, or to secure reduced paid-up insurance, may be exercised by the Insured during the lifetime of said Frances D. Bradley only with the written consent of said Frances D. Bradley any provision of the Policy to the contrary notwithstanding.

The beneficiary designation on policy No. 600540 and policy No. 600541, issued by the Lincoln National Life Insurance Company under date of April 23, 1941, provides in relevant part as follows:

Frances D. Bradley, wife of the Insured, if living, otherwise to any then living children that may be born of the marriage of the Insured and said wife and any then living children that may be legally adopted by said wife and the Insured during their marriage, the survivor or survivors equally, but if there be no survivor, to the Executors, Administrators or Assigns of the Insured, with right of revocation, subject to the terms and conditions of the policy. * * *

On December 23, 1946, the beneficiary provision was changed by interlineation to read as follows:

Frances D. Bradley, *former* wife of the Insured, if living, *without right of revocation*, otherwise to any then living children * * * [Italics supplied to designate the changes made by interlineation.]

By letter of January 6, 1956, the Lincoln National Life Insurance Company advised James, with respect to the then present status of policies No. 600–540–A10 and No. 600–541–A10, as follows:

As the policies now stand, the signature of Frances D. Bradley is required for any request of the Insured in connection with the policies such as changing the beneficiary, making a policy loan, assigning the policies or surrendering the policies for cash.

James, prior to December 31, 1954, did not request consent from Frances to:

a. remove or replace Frances D. Bradley, former wife of petitioner, as beneficiary of any of the policies;
b. assign the interest of said beneficiary;
c. designate settlement under the provisions as to modes of settlement;
d. revoke any such designations;
e. obtain cash loans;
f. procure cash surrender values;
g. secure reduced paid-up insurance.

And James, prior to December 31, 1954, took none of the above-mentioned actions.

From the date of the divorce decree until the present time the insurance policies have been in the custody and possession of Frances.

On the Federal income tax returns filed by the petitioners for the taxable year 1952, petitioners claimed and deducted from income the amount of $5,967.50 as alimony. The Commissioner disallowed this deduction on the ground that it did not constitute an allowable deduction under the provisions of section 23 (u).

On petitioners' Federal income tax return for the year 1953, the amount of $7,164.20 was claimed as an alimony deduction. The Commissioner disallowed this deduction as not allowable under the provisions of section 23 (u).

On petitioners' Federal income tax return for the taxable year 1954, the amount of $7,155.30 was claimed as an alimony deduction. The Commissioner, in explaining his adjustments to income, said:

(a) The deductions claimed in your return for $6,000.00, representing the rental value of a home furnished pursuant to a divorce decree and $1,155.30 representing life insurance premiums paid pursuant to a divorce decree are disallowed as not constituting allowable deductions under the provisions of Section 215 (a) of the Internal Revenue Code (1954).

In substance, petitioners' contention is that the arrangement concerning the rent-free use of the residential premises conferred a monthly economic benefit of $500 on Frances during the time she occupied the residence; that this economic benefit was taxable to her as alimony and, accordingly, that James, her former husband, was entitled to deduct $6,000 in each of the taxable years as "periodic payments" received by the wife from him in discharge of a legal obligation incurred under a written agreement incident to divorce.

So far as we can ascertain this contention has never before been presented for decision to this Court. It has, however, been rejected by the Court of Appeals for the Fifth Circuit in *Pappenheimer* v. *Allen*, 164 F. 2d 428, affirming 71 F. Supp. 788. The petitioners' arguments in attempting to show error in the decision of the Fifth Circuit are unconvincing. We are content to concur in the following reasoning from the *Pappenheimer* case:

Pappenheimer urges that the monthly rental values of the home are "periodic payments" received in discharge of, or attributable to property transferred in discharge of, a legal marital obligation imposed on him by the divorce agreement and decree and made income to his wife by Section 22 (k).[1] The district judge held there were no periodic payments in any ordinary sense, and we agree. It is true that a payment may be made in property, and if the enjoyment of the residence be thought of as a payment of his alimony, it was a payment by transferring a property right in the home; but then it is not periodic, but is a single right to occupy until her death or remarriage, or until the children both leave her, or marry or reach the age of twenty-three. Nobody paid any monthly rent. She occupied under the right granted her, as a sort of estate. But if the rental values can be considered "periodic payments", they are attributable to property transferred and Section 22 (k) goes on to say that although they are income to the wife, "Such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband", and

the last sentence of Section 23 (u) says that because of that provision in 22 (k) the husband may have no deduction. The theory of the subsections is that the wife shall pay tax on what she periodically receives from the husband in money or property. If he pays money, it will ordinarily be from his taxed income, and he is granted a deduction to avoid double taxation to him and his former wife. If the payments are attributable to property transferred, the wife is to be taxed on them, but they are not to be taxed to the husband as income because he did not receive them; but he has no deduction because they did not form part of his taxed income. * * * [Footnote omitted.]

Petitioners next argue that if deductibility of the stipulated rental value of the residence is denied as not constituting periodic payments of alimony, they nevertheless are entitled to deduct depreciation on the residence. But depreciation is allowable under the applicable sections of the Code (sec. 23 (1), I. R. C. 1939 and sec. 167 (a), I. R. C. 1954) only if the property is used in trade or business or held for the production of income. Clearly the property here involved, a personal residence, was not business property. Nor is there any evidence it was ever held for the production of income. James never received or reported any income from it on his tax returns. He argues that in a sense it was income producing since if he had not allowed Frances the use of the residence rent free, he would have had to expend other sums to provide her with a home. But there is nothing in the record to establish that he would have been so compelled, and, even assuming this were so, it is difficult to see how a saving of expense would translate non-income-producing property into property held for the production of income. We conclude that James is not entitled to depreciate the residence. See *Lindsay C. Howard*, 16 T. C. 157, affd. (C. A. 9) 202 F. 2d 28.

Neither can we find any merit in petitioners' argument that payments made by James to reduce the encumbrance on the property are deductible as alimony. True, he bound himself in the property settlement agreement to make such payments and the payments conferred an "economic benefit" on Frances in the remote sense that if the payments had not been made foreclosure might have deprived Frances of her rent-free use of the house. This argument is too tenuous to have substance. James was already bound to make the mortgage payments. His additional promise under the property settlement agreement was well secured by stock placed in escrow. He increased the amount of the encumbrance several times, apparently for his own benefit, and it would stretch the imagination to hold that the payments he made in reducing the indebtedness constituted alimony to Frances. The payments are not deductible.

The remaining question is whether the premium payments on the life insurance policies described above are deductible as alimony. We think they are not. This question has been dealt with in a number of decisions by this Court and the Courts of Appeals in varying fact

situations. See *Anita Quinby Stewart*, 9 T. C. 195; *Lemuel Alexander Carmichael*, 14 T. C. 1356; *Smith's Estate* v. *Commissioner*, (C. A. 3) 208 F. 2d 349, reversing in part a Memorandum Opinion of this Court; *Lilian Bond Smith*, 21 T. C. 353; *Raoul Walsh*, 21 T. C. 1063. The cases stand for the proposition that where the wife's interest in the policies is simply that of a contingent beneficiary—that is, where the policies have not been assigned to her in such a way that she becomes the actual owner and where the proceeds of the policies become hers only if she outlives her husband—the premiums paid by the husband are not deductible by him. We think that is the situation here. The policies were never assigned to Frances. Under the agreement James bound himself to continue to pay the premiums and not to remove Frances as beneficiary so long as she should live. Although Frances held possession of the policies, that was not enough to make her their owner. Should she predecease James her interest ceased. Paraphrasing the language of Judge Black in *Raoul Walsh*, *supra:*

We think it also may be correctly said in the instant case that Frances's only interest in the policies of insurance on James's life is contingent and that the premiums on the policies were not paid for her sole benefit. She will only receive benefits from these policies in case she survives James. We sustain the Commissioner in his disallowance of the net premiums which James paid on the insurance policies in the taxable years. They did not represent periodic payments of alimony to Frances.

*Decision will be entered for the respondent.*