James McEvoy, Jr., and Dorothy L. McEvoy v. Commissioner.
McEvoy v. Commissioner
Docket No. 84872.
United States Tax Court
T.C. Memo 1962-272; 1962 Tax Ct. Memo LEXIS 34; 21 T.C.M. (CCH) 1441; T.C.M. (RIA) 62272; November 20, 1962
James McEvoy, Jr., pro se, 16837 E. Jefferson Ave., Grosse Pointe, Mich. Julian R. Ettelson, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent has determined deficiencies in the income tax of petitioners *35 for the taxable years 1955 and 1956 in the respective amounts of $3,126.87 and $1,594.29. The issues are (1) whether premiums paid by petitioner on policies of life insurance are deductible as alimony; (2) whether amounts paid by petitioner for the storage and shipping of household goods belonging to his divorced wife in pursuance of the terms of a decree of divorce are deductible as alimony; (3) whether amounts expended by petitioner in payment of his former wife's attorney fees in accordance with the requirements of a divorce decree are deductible as alimony; and (4) whether petitioner is entitled to a dependency exemption for the two minor children of himself and his former wife. Other adjustments made in the deficiency notice are not contested or have been specifically conceded by the petitioner. Findings of Fact We adopt the stipulation of the parties as our findings of fact as follows: Petitioners, James McEvoy, Jr., and Dorothy L. McEvoy, are husband and wife residing at 16837 East Jefferson, Grosse Pointe 30, Michigan. They filed their joint income tax returns for the taxable years 1955 and 1956 with the district director at Detroit, Michigan. James McEvoy, Jr., hereinafter *36 referred to as petitioner, was formerly married to Helen Huff McEvoy. Two children, James McEvoy III and Jean McEvoy, were born of this marriage on April 16, 1940, and May 1, 1943, respectively. On February 23, 1954, the Circuit Court for the County of Wayne, State of Michigan, in chancery entered a decree of divorce to become final 6 months from and after the date of entry. The decree of divorce provided, in part, as follows: Evidence was thereupon adduced in open court by and on behalf of the plaintiff, from which the Court finds that it has jurisdiction of this cause, of both parties to this cause, of the subject matter of this cause, and of the two children of the parties * * *. And the Court having read, considered and adopted the Report and Recommendation of the Friend of the Court filed in this cause with respect to the minor children of the parties. And the Court having read and considered a Property Settlement Agreement in writing made and entered into between the parties to this cause under date of the 24th day of November, 1953, which Property Settlement Agreement was identified and offered in evidence at said trial and concerning which evidence was adduced in open *37 court. And the Court being fully advised in the premises: On motion of Baldwin, Boos and Baldwin, attorneys for plaintiff, IT IS ORDERED, ADJUDGED and DECREED, and this Court, by virtue of the authority therein vested and in pursuance of the statute in such case made and provided, DOTH ORDER, ADJUDGE and DECREE as follows: The decree further provided, in part, as follows: V. Property Settlement - Maintenance of Insurance on Husband's Life for Benefit of Wife and Children The defendant maintains policies of insurance upon his life with the Northwestern Mutual Life Insurance Company bearing the following policy numbers, dates and face amounts and upon each of which the quarter-annual premium is as indicated and in each of which the plaintiff is the primary beneficiary and the children in equal shares are the secondary or contingent beneficiaries, and which policies have been delivered by the defendant to the plaintiff who has acknowledged receipt thereof, in pursuance of paragraph 1 of the Property Settlement Agreement and concerning which the defendant has agreed to pay the premiums on these policies as they mature, which provision is part of said property settlement and *38 is not permanent alimony: Policy
Date of
Face
Quarterly
No.
Policy
Amount
Premium
4,099,314
5/ 3/48
$13,690.00
$107.33
2,878,998
5/ 3/38
10,000.00
57.00
4,300,551
11/ 2/50
20,000.00
80.00
2,638,778
5/31/35
10,000.00
52.90
4,349,501
6/ 2/51
10,000.00
89.40
4,349,502
6/ 4/51
10,000.00
89.40
The defendant is enjoined and restrained from changing, modifying, impairing, borrowing upon or surrendering any of said policies of insurance or any rights under said policies as they existed on November 24, 1953; provided, however, that in the event of the plaintiff's remarriage each of the above described policies shall be changed to provide that the children of the parties shall be the primary beneficiaries in equal shares and that the plaintiff shall have no further interest in said insurance, the policies to be returned to the possession of the plaintiff when changed, and the injunction against the defendant being modified to that extent in event of the plaintiff's remarriage. On page 6 of the decree, paragraph VII provides: VII. Permanent Support of Children After Decree Becomes Final and Payment of College Education for Children *39 and Payment of Costs of Emergency Befalling Children On the 24th day of the month when this Decree becomes final and absolute, the defendant shall pay the sum of $150.00 for the support and maintenance of each child to the Friend of the Court, ex officio Clerk of this Clerk, and a like sum of $150.00 per month for the support and maintenance of each child on the 24th day of each and every month thereafter until the further order of this Court; provided, however, that in event of the plaintiff's remarriage said monthly payment for the support and maintenance of each child is increased to $250.00 per month. In addition to the foregoing provision for the support and maintenance of said children, the defendant shall pay as his direct and primary obligation the cost and expense of a college education for each of the two children not to exceed $2,000.00 for each child for each college year; and the monthly provision for the support and maintenance of each such child last above provided is not to be paid during the months of any year that such child goes to college, but shall be paid during the months of June, July and August of each year that the child goes to college, and, if the child *40 attends college for only part of a college year, then the monthly sum above provided for such child shall be paid for each month that such child does not attend college. In event any emergency such as accident, sickness or other physical misfortune shall befall either of the children of the parties before such child has completed its college education, then and as often as any such event occurs, the defendant shall pay and defray as his own direct and primary obligation so much of the cost and expense resulting from such emergency as cannot be defrayed by the use of the monthly provision above provided for the support and maintenance of the child; provided, however, that the defendant has the right to know what arrangements are contracted for with respect to any accident or misfortune of either such child in advance of the making of the same, and provided further that nothing in this paragraph shall be construed to obligate the defendant to pay for normal medical and dental expenses incurred with respect to each child, the payment for which is intended to be covered by the monthly payments for such child above provided. On page 9 of the decree, paragraph XI provides: XI. Property *41 Settlement - Household Furniture, Storage Fees and Moving Expenses By the terms of the Property Settlement Agreement, the defendant has agreed to pay the warehouse and storage fees and the moving expenses necessary to permit the plaintiff to withdraw from storage and transport to a place of her choice, which it is anticipated may be Sioux City, Iowa, the furniture, furnishings and household equipment used by the parties which were, by the terms of the Property Settlement Agreement, transferred to and made the property of the plaintiff with the exception of the following articles which remain the property of the defendant, viz.: * * * On page 9 of the decree, paragraph XII provides: XII. Property Settlement - Attorney Fees The defendant has agreed to pay to Baldwin, Boos and Baldwin, attorneys for the plaintiff, the fee of $2,400 in four payments of $600.00 each, the first of which payments shall be made by the defendant on the entry of this Decree and the next three payments in successive periods of four months each, and which attorney fees shall be in full of all fees of attorneys for their services in representing the plaintiff in negotiations leading up to the Property *42 Settlement Agreement and in this suit, and which fees cover the costs and expenses of the plaintiff with respect to this litigation. The defendant is hereby ordered to make such payments of attorney fees as and when they mature. On page 4 of the decree, paragraph IV provides: IV. Permanent Custody of Children That the exclusive care, custody and education of the said children of the parties are awarded to the plaintiff, subject to the right of the defendant to see and visit the children at the home of the children at such reasonable times as shall not interfere with their religious or secular education and well-being, and the defendant may have the son of the parties after Christmas Day for the balance of the Christmas holiday for the year 1954 and succeeding years, and the daughter of the parties for her Easter holiday for 1954 and succeeding years, if the defendant at his expense will arrange for the services and transportation of a suitable travelling companion for the son and for the daughter and will pay the travelling and other expenses of the son and the daughter; and further that during the summer vacations the defendant is entitled to have the son and the daughter *43 for three weeks of each year provided he furnishes and pays for the services and transportation of a suitable travelling companion for each child and pays the travelling and other expenses of each child. Neither the plaintiff nor the defendant will say or do anything to either child or in either child's presence which would tend to lessen or diminish the honor and respect such child should be taught with respect to both of the child's parents. On page 11 of the decree, paragraph XVI provides: XVI. Statutory Insurance Clause That with the exception of the policies of insurance upon the life of the defendant hereinabove specifically mentioned and described, which policies of insurance are not affected by the terms of this statutory insurance clause, any interest which either of the parties hereto may have had heretofore, or may now have in any of the insurance policies or contracts of the other party shall be and hereby is extinguished and that the parties hereto shall in the future hold all such insurance free and clear of any right or interest which the other may have had heretofore or may now have therein or thereto by virtue of being the beneficiary, the contingent beneficiary *44 or otherwise. During the years 1955 and 1956, petitioner made child support payments to Helen through the Friend of the Court in the amounts of $3,300 and $3,600, respectively. From the middle of September 1956 through the end of 1956, James III lived with the petitioners while he was attending school in Grosse Pointe, Michigan. In each of the months September, October, and November 1956, Helen refunded to petitioner $100 of the $150 which she received for the support of James III. In December 1956, she refunded the entire $150 which she received for the support of James III. Thus, in 1956 the petitioner paid the net sum of $3,150 to Helen through the Friend of the Court for the support of petitioner's minor children. Pursuant to the provisions of the decree, quoted above, petitioner delivered possession of the life insurance policies to Helen and paid the premiums thereon in 1955 and 1956, totaling $1,451.98 and $1,227.51, respectively. The furniture and household goods awarded to Helen remained in storage until 1955, at which time they were transported to California at a total cost for storage and transportation of $2,748.76, which amount was paid by the petitioner in 1955. *45 In 1955, the petitioner paid the final installment of $600 to the attorneys representing Helen, pursuant to the terms of the decree. The deficiencies determined against the petitioners for 1955 and 1956 were based on the determination by the Commissioner that the following expenditures deducted by them as miscellaneous expenses on their joint Federal income tax returns were not deductible under the provisions of the Internal Revenue Code of 1954: 1955
1956
Child support payments
$3,300.00
$3,600.00
Premiums on life insurance
policies pursuant to decree
of divorce
1,451.98
1,227.51
Cost of storing and shipping
Helen's furniture to Cali-
fornia
2,748.76
Final installment of fee pay-
able to Helen's attorneys
for their services in negoti-
ating the property settle-
ment and in obtaining the
the divorce decree
600.00
Total
8,100.74
4,827.51
The petitioners concede that they are not entitled to deduct the child support payments in 1955 and 1956. The petitioners do claim as affirmatively set forth in their petition, that they are entitled to a dependency exemption for James III and Jean C. McEvoy for the years 1955 and 1956. Opinion *46 Deductibility of the amounts paid by petitioner in pursuance of the terms of the divorce decree, pertinent portions of which are set forth in our findings of fact, is governed by section 71(a)(1) of the Internal Revenue Code of 1954, which provides that there is to be included in a divorced wife's gross taxable income "periodic payments" made by the divorced husband in pursuance of the divorce decree "in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by" him thereunder; by section 71(c)(1) thereof, which provides that the "periodic payments" referred to in section 71(a) do not include "installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree;" and by section 215 thereof, which provides that the husband may deduct amounts paid by him under a decree of divorce which are includible in the gross income of the wife under section 71. By the above statutory provisions Congress has sought to equalize the incidence of Federal income taxation in situations of divorce where, because of diverse wording of divorce *47 laws and rules of practice in divorce courts, what would constitute alimony payments deductible by the husband would in other states be nondeductible by him. It has sought to tax to the divorced wife amounts paid solely for her support but has relieved her of taxation with respect to amounts paid by the husband which are in the nature of or incident to the settlement of their property rights. We have specifically passed upon the deductibility of life insurance premiums paid under a divorce decree by a husband where, as here, the wife is decreed to be contingent beneficiary of the policies but the husband retains full or partial ownership thereof and have held in James Parks Bradley, 30 T.C. 701, and other cases, that such premiums are not deductible by him as "periodic payments" taxable to the wife under section 71(a)(1). The fact that the decree enjoined the exercise by him of some of the rights of ownership during the period represented by his wife's life or until her remarriage does not in our view distinguish this case from Bradley, supra, or others wherein the principle has been enunciated. All of the rights of ownership except the right to change beneficiary *48 remain to him under the policies and the terms of the decree contingent only upon the death of his divorced wife prior to his death or her remarriage. If the children for any reason should fail as beneficiaries, entire ownership of all rights under the policies remain with the petitioner. Petitioner's payment of storage and shipping costs with respect to household goods belonging to his former wife under the terms of the decree are, by those terms, clearly not alimony and are clearly incident to the property settlement provisions of the decree. Such payments are therefore not "periodic payments" arising from the family relationship within the meaning of section 71(a)(1) and therefore not deductible by him. The attorney fee of his divorced wife, part of which ( $600) was paid by petitioner during 1955 because of the requirements of the divorce decree certainly is not a "periodic payment" under section 71(a)(1) but is instead clearly "installment payments discharging a part of an obligation the principal sum [$2,400] of which is * * * specified in the decree" within the meaning of section 71(c)(1) and therefore specifically excepted from those payments by a divorced husband which *49 are deductible by him because they are taxable to his former wife under section 71(a)(1). Petitioners wholly fail in their burden of proof with respect to their claim for a dependency deduction for each of the minor children involved. No creditable testimony was offered with respect to this issue except the unsupported statement of petitioner James McEvoy, Jr., that the expense of living costs of petitioners' family did not rise by $150 per month (the allowance for the support of each child under the decree) during the period in 1956 when James McEvoy III lived with petitioners. We are unable to make a determination based on this testimony or the stipulated facts as to the total cost of support of the two children in 1955 and 1956 and are therefore for lack of evidence unable to determine which parent furnished more than half of such cost. We leave the parties where we find them on this issue. Decision will be entered under Rule 50.