**Huston E. TURPIN and Helen J. Turpin, Plaintiffs,**

**v.**

**The UNITED STATES of America, Defendant.**

**No. 14538–3.**

United States District Court
W. D. Missouri, W. D.
April 9, 1965.

John B. Gage, Elmer B. Hodges, of Gage, Hodges, Park & Kreamer, Kansas City, Mo., for plaintiffs.

F. Russell Millin, U. S. Atty., Kansas City, Mo., and John B. Jones, Jr., Acting Asst. Atty. Gen., Washington, D. C., for defendant.

DUNCAN, District Judge.

Plaintiffs, husband and wife, instituted this suit against the defendant under § 1346(a) (1) Title 28, U.S.C.A. as amended by Public Law 559, 83rd Congress, in four counts to recover internal revenue taxes and interest thereon, allegedly erroneously assessed and collected for the calendar years 1957, 1958, 1959 and 1960.

The plaintiffs protest the disallowance of certain premium payments as alimony deductions in each of said years, said premiums being paid by plaintiff, Huston E. Turpin on a policy of life insurance required to be maintained by him under a property settlement agreement incident to his divorce from Leva Mae Turpin.

It is alleged in the complaint that during the taxable years in controversy, Leva Mae Turpin was the sole and absolute owner of all rights under said policy of insurance.

The matter is before the court on Stipulation,[1] and each side has filed Mo-

I.        "STIPULATION

"It is hereby stipulated between the plaintiffs and the defendant herein that the following facts are true, with the understanding that either party may introduce at the trial of this case further testimony not inconsistent with the facts herein stipulated, and each party reserves its right to make objections to the consideration of any of the items herein stipulated on the ground that such evidence is not competent or material or relevant to the issues of this cause.

"1. Prior to April 7, 1948, plaintiff Huston E. Turpin and one Leva Mae Turpin were husband and wife. On or about January 8, 1948, said Leva Mae Turpin instituted an action for divorce in the Circuit Court of Jackson County, Missouri at Independence. Thereafter, on April 7, 1948, incident to an in contemplation of such divorce, the said Huston E. Turpin and said Leva Mae Turpin entered into a written agreement entitled 'Agreement and Stipulation for Property Settlement', a true and correct copy of which is attached hereto as Exhibit 'A'; and on the same date a decree of divorce was entered in the Circuit Court of Jackson County, Missouri, dissolving the bonds of matrimony as to the said Huston E. Turpin and Leva Mae Turpin.

"2. Under the terms of the Agreement and Stipulation for Property Settlement so entered into, there was imposed upon plaintiff Huston E. Turpin the obligation to maintain insurance on his life, in which said Leva Mae Turpin should be named as beneficiary, in the amount of $50,000 for ten years next following the date of said agreement and thereafter in the amount of $25,000; such life insurance to be maintained by Huston E. Turpin so long as the said Leva Mae

Turpin should live, unless she should remarry, the said Huston E. Turpin being obligated to pay and maintain the premiums on such insurance as the same might accrue.

"Pursuant to the terms of said Agreement and Stipulation for Property Settlement, plaintiff Huston E. Turpin secured two ordinary life insurance policies in the amount of $25,000 each. These were Connecticut General Life Insurance Company Policy No. 701 716, which lapsed in February, 1950, due to non-payment of quarterly premium. The Connecticut General Life Insurance Company would not reinstate the policy for medical reasons. The policy was replaced on April 4, 1950, by Columbian National Life Insurance Company Policy No. 309456, a true and correct copy of which is attached as Exhibit 'B'. The policy was carried by Mr. Turpin until 1963. The other policy taken out in April, 1948, was Columbian National Life Insurance Company Policy No. 298916, a true and correct copy of which is attached as Exhibit 'C'. Mr. Turpin still carries this policy.

"On April 9, 1953, Mr. Turpin took out Kansas City Life Insurance Co. policy Nos. 1,316,166 and 1,316,167, true and correct copies of which are attached as Exhibits 'D' and 'E'. These two policies thereafter fulfilled the requirements of the Agreement and Stipulation for Property Settlement. In said policies Lea Lincoln Turpin, who is one and the same person as 'Leva Mae Turpin', was designated as beneficiary, plaintiff Huston E. Turpin reserving no right to change said beneficiary. Mr. Turpin then changed the beneficiaries of the two Columbian National Life Insurance Company policies theretofore owned so that his

tion for Summary Judgment. (Caption omitted)

The undisputed facts are that prior to April 7, 1948, plaintiff Huston E. Turpin and Leva Mae Turpin were husband and wife, and that on or about January 8, 1948, Leva Mae Turpin instituted an action for divorce in the Circuit Court of Jackson County, Missouri, at Independence; thereafter on April 7, 1948, incident to and in contemplation of said divorce, the said Huston E. Turpin and Leva Mae Turpin entered into a written agreement, entitled, "Agreement and Stipulation for property settlement", under the terms of which there was imposed upon the plaintiff, Huston E. Turpin, the obligation to maintain insurance on his life in which Leva Mae Turpin should be named as beneficiary in the amount of $50,000 for ten years next following the date of the agreement, and thereafter in the sum of $25,000. Such life insurance was to be maintained by the said Huston E. Turpin so long as the said Leva Mae Turpin should live, unless she should remarry, the said Huston E. Turpin being obligated to pay and maintain the premiums on such insurance as they might accrue.

It is further stipulated that pursuant to the "Agreement and Stipulation for

Property Settlement", Huston E. Turpin secured two ordinary life insurance policies in the amount of $25,000 each in the Connecticut General Life Insurance Company. One of them, Policy No. 701 716, lapsed in 1950 due to non-payment of quarterly premiums. The Connecticut General Life Insurance Company refused to reinstate the policy for medical reasons.

On April 4, 1950, the Columbian National Life Insurance Company issued its Policy No. 309456 upon the life of Huston E. Turpin, which policy was carried by him until 1963. The other policy taken out in April, 1948, in the Columbian National Life Insurance Company is still carried by Huston E. Turpin. In each of these policies Leva Mae Turpin was named the beneficiary.

On April 9, 1953, Turpin took out two policies in the Kansas City Life Insurance Company. One of these insurance policies was a convertible five year term policy, and the other was a fifteen year term policy. It is stipulated that these policies fulfilled the requirements of the "Agreement and Stipulation for Property Settlement". In these policies Lea Lincoln Turpin (the same person as Leva Mae Turpin) was designated as beneficiary.

divorced wife was no longer named in them as beneficiary.

"3. On or about December 27, 1957, plaintiff Huston E. Turpin and said Lea Lincoln Turpin (Leva Mae Turpin) jointly requested that an endorsement be placed on Kansas City Life Insurance Policy No. 1 316 167, vesting in said Lea Lincoln Turpin and her estate all rights of ownership and control of said policy, so that plaintiff Huston E. Turpin should have no right of ownership, control or reversionary interest of any kind or character therein. Such request was accepted by the Kansas City Life Insurance Company and on January 3, 1958, an endorsement as requested was affixed to the policy as a rider, such endorsement appearing as part of Exhibit 'E' attached hereto.

"4. The said Leva Mae Turpin is still living, and has not remarried since the time of said divorce.

"5. Pursuant to the obligations imposed upon the said Huston E. Turpin under the terms of said Agreement and Stipulation for Property Settlement, plaintiff Huston E. Turpin has paid to Kansas City Life Insurance Company in each year the annual premiums on said Policy No. 1 316 167 above referred to, the amount of such annual premiums paid in the calendar year 1957, subsequent to the endorsement referred to in Paragraph 3 hereof, being $741.25; the amount of such premiums paid in the calendar year 1958 being $741.25; the amount of such premiums paid in the calendar year 1959 being $741.25; and the amount of such premiums paid in the calendar year 1960 being $786.00.

"Agreed to and approved.

"/s/   Elmer B. Hodges
"/s/   John B. Gage
       "Attorneys for Plaintiffs

"/s/   Robert W. Ryan, Jr.
       "Attorneys for defendant"

In the first two Columbian National Life Insurance Company policies, the right to change the beneficiary was reserved in the insured, Huston E. Turpin. It is stipulated that in the Kansas City Life Insurance Company policies, Turpin did not reserve the right to change the beneficiary. After taking out the last two policies, Turpin changed the beneficiary of the two Columbian National Life Insurance Company policies so that his divorced wife was no longer named as the beneficiary.

On or about December 27, 1957, Huston E. Turpin and Lea Lincoln Turpin (Leva Mae Turpin) jointly requested that an endorsement be placed on Kansas City Life Insurance Company Policy No. 1 316,167 vesting in said Lea Lincoln Turpin and her estate, all rights of ownership and control of said policy so that plaintiff Huston E. Turpin should have no right of ownership, control, or reversionary interest of any kind or character therein. The request was accepted by the Kansas City Life Insurance Company on January 3, 1958, and the endorsement as requested, was affixed to the policy as a rider.

Prior to 1957, the alimony payments were deducted by Turpin from his income tax payments, but he did not seek to deduct the amount of the insurance premiums. Beginning with the calendar year 1957, and after the endorsement assigning all rights in the policy to Lea Lincoln Turpin, the plaintiffs, as husband and wife, deducted from their income tax returns, the amount of such premiums, and continued to deduct such payments for the subsequent years 1958, 1959 and 1960.

In each instance the Bureau disallowed the deductions and they were paid under protest by the plaintiffs. All administrative requirements were exhausted before the institution of this suit.

The "Agreement and Stipulation for Property Settlement" was executed on April 7, 1948, and the specific provision with which we are concerned here, is:

"In consideration of the premises it therefore is hereby agreed that in the event the court grants the above named plaintiff a decree of divorce and awards her alimony, that the above named defendant:

"(1) Will promptly pay each month such alimony awarded by the court, so long as she shall live, unless she shall marry again. That defendant will maintain a life insurance policy in the amount of $50,000.00 on his life in which the plaintiff herein shall be named as beneficiary, and defendant herewith agrees that he will pay and maintain the premiums on said insurance policy as same may accrue. The aforesaid mentioned $50,000.00 insurance policy shall be maintained by defendant for the plaintiff for the period of the next ten years, thereafter such insurance policy on defendants (sic) life shall be maintained in the amount of $25,000.00 instead of that of $50,000.00. It is understood herewith that such life insurance is to be maintained by defendant so long as plaintiff shall live, unless she shall again marry."

The only other provision of the Agreement with which we might now be concerned, is paragraph (5a) which provides:

"In the event the court grants plaintiff a decree of divorce, the defendant, Huston E. Turpin, agrees also to pay the Plaintiff, a monthly alimony of $500.00 which said monthly amount is to be paid to Plaintiff on the 5th day of each month."

On the same day (April 7, 1948) that the "Agreement and Stipulation for Property Settlement" was signed, a divorce was granted to the plaintiff therein, and she was allowed the sum of $500.00 per month alimony.

The question for this court's determination now is whether or not under the state of facts set out above, the plaintiffs are entitled to deduct the insurance pre-

miums paid by them under § 71 Internal Revenue Code 1954, which provides:

"(a) *General Rule.*—

"(1) *Decree of divorce or separate maintenance.*—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

"(2) *Written separation agreement.*—If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments * * * received after such agreement is executed which are made under such agreement and because of the marital or family relationship * * *.

"(3) *Decree for support.*—If a wife is separated from her husband, the wife's gross income includes periodic payments * * * received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance."

It is now the plaintiff's contention that after the transfer of absolute ownership of the policy to the beneficiary, no right of control or interest in said policy being retained by the insured, Turpin was entitled to deduct premiums paid on that policy under the statute.

The contention of the defendant is that the "Agreement and Stipulation for Property Settlement" required no more of the insured than that he name his divorced wife as the beneficiary, and that said agreement did not vest in her any rights in and to said policies, except in the event of Turpin's death during her lifetime.

It is further the contention of defendant, that payments for life insurance premiums may not be allowed under such circumstances, except where the *property settlement agreement* itself required that the absolute ownership and control of the policy be in the wife.

The defendant further contends that under the terms of both the Columbian National and Kansas City Life Insurance policies prior to 1957, the beneficiary had no vested rights in said policies, and did not derive or receive any benefit whatsoever except in the event of Huston E. Turpin's death. She could not have demanded the cash surrender value or the loan value on any of said policies.

Defendant further insists that the assignment of the policies in 1957, as aforesaid by the rider attached thereto, was not in pursuance either of the divorce decree or of the property settlement, but was the result of a separate understanding and agreement executed almost nine years after the original agreement was executed.

The Tax Court has repeatedly held that insurance premiums paid by a husband in conjunction with a property settlement agreement may be deducted by the husband as periodic alimony payments, only if the ownership of the policies is vested in the divorced wife. If the wife receives only a contingent interest, the premium payments are not deductible by the husband. Bradley v. C. I. R., 30 T.C. 701 (1958), Griffith v. C. I. R., 35 T.C. 882 (1961).

In the few cases where the question has been before the appellate courts, they seem to have generally followed this interpretation of the statute by the Tax Court. See Seligmann v. C. I. R., 207 F.2d 489 (7th Cir. 1953), Smith's Estate v. C. I. R., 208 F.2d 349 (3rd Cir. 1953; Hyde v. C. I. R., 301 F.2d 279 (2nd Cir. 1962).

In this case, it was not until the second policies were taken out in 1953 that even

the right to change the beneficiary was done away with. There can be no question, however, that after the transfer of the policy in 1957, when the beneficiary became the absolute owner thereof and entitled to all the benefits provided in the policy, (cash or loan values, etc.) she no longer had a mere contingent interest.

A further question, and a more difficult one remains for the court. That is, must the property agreement itself require a complete transfer of ownership in the policy to the wife before premium payments by the husband are deductible by him?

The defendant strongly urges that the property settlement agreement must determine the taxability of the premium payments, and the Tax Court holdings support this position. Griffith v. C. I. R., supra.

Under the terms of the property settlement in question, the plaintiff was very definitely required to provide his former wife with a policy of insurance on his life. However, there was no provision in the agreement as to the type of insurance or interest of the wife, other than that she be named as beneficiary, and, in fact, for the first five years she acquired absolutely no interest in the policies that was not revocable.

Thereafter, for the next five years, her only interest in the policies was that she could not be displaced as beneficiary. She acquired no rights to any benefit under the policy except in the event of the insured's death. There is nothing in the record indicating any objection to these arrangements.

Let us assume that the insured had seen fit to change the beneficiary and name some other person as the beneficiary and then had died. Under such conditions, the ex-wife could not have collected the proceeds. She might have had recourse against his estate, but she would have no interest under the policy.

Primarily the purpose of the statute was to require the ex-wife to include in her gross income alimony and its incidents and to permit the ex-husband to deduct such payments from his gross income. Simply stated, such payments cannot be deducted by the ex-husband unless they are chargeable to the wife as income.

We believe that under the law as it existed at the time the Property Settlement was arrived at, the wife acquired no vested interest in the policy and the husband was not entitled to deduct the amount of premiums from his income tax, and he did not do so.

However, the Act was amended in 1954. What was originally § 22(k) Internal Revenue Code of 1939, by revision became § 71 Internal Revenue Code 1954, and there was added paragraph (2) of that section which provided that:

"If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments * * * received after such agreement is executed which are made under such agreement and because of the marital or family relationship * * *."

Pursuant to this section, the Internal Revenue Department promulgated Regulation 1.71–1(b) (2) which provided:

"For purposes of section 71(a) (2) any written separation agreement executed on or before August 16, 1954, which is altered or modified in writing by the parties in any material respect after that date will be treated as an agreement executed after August 16, 1954, with respect to payments made after the date of alteration or modification."

The modification with which we are dealing here was made in 1957, after the adoption of the 1954 Amendment. Mertens' Law of Federal Income Taxation, Code Commentary Volume, Sec. 71:3, discussing Section 71(a) (2) says:

"Flexibility is available in modifying after the effective date of the 1954 Code an agreement executed prior to that date, and the altered agreement will be considered to have

been executed after that date. It is not necessary that the agreement be a legally enforceable instrument * * * This provision was introduced by the 1954 Code, and is of particular benefit where a husband and wife have separated but do not desire the publicity, inconvenience, or expense of a court action."

Likewise in Prentice-Hall 1964 Federal Taxes, P 7715:

"Many payments are still received by wives under separation agreements which were executed prior to August 16, 1954, and which were not incident to a divorce or legal separation as required of alimony payments by Sec. 22(k) of the 1939 Code. Therefore, the husband will not be allowed a deduction for such amounts nor will the wife be taxed on their receipt * * * Should such an agreement be materially modified after the above date, however, the tax effect of payments received thereafter will be reversed. They will then be deductible by the husband and taxable to the wife. * * * Where it is in the interest of the parties so to arrange it, a similar result may be obtained by securing modification of a support decree executed prior to March 1, 1954."

■ Clearly, it would seem that it was the intent of the Congress in enacting the Amendment included in the 1954 revision, to permit the parties to a marital agreement to do exactly what the parties did here. That is, to modify an agreement that was entered into prior to the 1954 Amendment, which would not permit the husband to deduct premium payments on insurance policies for the benefit of the wife so as to bring it within the provisions of the 1954 Code, and entitle him to claim such exemptions.

Under such circumstances, the plaintiffs' motion for summary judgment should be and is hereby sustained, and the defendant's motion for summary judgment is overruled.