LEONARD F. AUERBACH AND MADGE G. AUERBACH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Auerbach v. Commissioner
Docket No. 512-74
United States Tax Court
T.C. Memo 1975-219; 1975 Tax Ct. Memo LEXIS 154; 34 T.C.M. (CCH) 948; T.C.M. (RIA) 750219; July 2, 1975, Filed Leonard F. Auerbach, pro se. Gerald W. Hartley, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined deficiencies of $2,656.15 and $1,935.49 in the federal income taxes of petitioners for the calendar years 1969 and 1970, respectively. Certain issues having been conceded, the questions remaining for our determination are: (1) whether insurance premiums paid by petitioner-husband pursuant to a separation agreement which was incorporated into a divorce decree are deductible under section 215, I.R.C. 1954[1]; (2) whether loan repayments made by petitioner-husband on *155 the above-mentioned insurance are deductible under section 215; and (3) whether certain payments made by petitioner-husband during the period February 8, 1969 and May 2, 1969 were made pursuant to a "written separation agreement" within the meaning of section 71(a)(2) with the result that such payments are deductible under section 215. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners Leonard F. Auerbach and Madge G. Auerbach are husband and wife who, at the time of the filing of the petition herein, maintained their legal residence in St. Petersburg, Florida. They filed their joint federal income tax returns for the calendar years 1969 and 1970 with the district director of internal revenue at Cincinnati, Ohio. Madge A. Auerbach is a party to this action solely by virtue of having joined in the filing of a joint return and consequently Leonard F. Auerbach will hereinafter be referred to as the petitioner. Prior to September 30, 1969 petitioner *156 was married to Miriam L. Auerbach (hereinafter Miriam). On that date petitioner and Miriam were finally divorced by a Journal Entry entered by the Cuyahoga County Court of Common Pleas, State of Ohio. This Journal Entry incorporated the separation agreement of May 2, 1969, referred to below, in all respects and implemented such agreement as if it were a part of the divorcing Journal Entry. In November, 1967, the state of petitioner's and Miriam's marriage was such that they decided to see a friend who was an attorney in order to discuss a separation and divorce. At this friend's suggestion petitioner and his wife worked up some figures with respect to their living costs. After a temporary reconciliation, petitioner, in late January, 1969, left the house where he and Miriam lived. On February 8, 1969, petitioner sent a letter to his wife and a check for $225. In this letter petitioner stated that he was going to send her support payments based on the above-mentioned figures worked up in 1967. The letter was signed by petitioner but not by Miriam. Between February and April, 1969, petitioner sent checks totaling $2,742.81 [2] to Miriam which she cashed. Sometime in the spring of 1969 *157 Miriam's attorney stated to petitioner that he felt these payments were fair. On May 2, 1969, petitioner and Miriam executed a written agreement captioned "Separation Agreement" which provided for the settlement of property rights, the support and maintenance of Miriam and the settlement of other rights and obligations. This agreement, in part, required petitioner to make alimony payments of $1,200 per month to Miriam until her remarriage or death or until petitioner's death and property settlement payments, by the purchase of certain of Miriam's assets, of $100,000, payable $2,500 quarterly. The May 2, 1969 agreement also stated, after identifying thirteen life insurance policies on petitioner's life owned by him, that Miriam was to be named the irrevocable sole and primary beneficiary, which was done, of such policies until her death or remarriage. According to the May 2, 1969 agreement, these policies were to be assigned to Miriam upon her remarriage or to her estate upon her death only in the event any sums were then owing to her by virtue of any provisions of the May 2, 1969 agreement. *158 The assignment of the policies was to serve as collateral security for the payment of all such sums. On May 2, 1969, the date of the separation agreement, there were approximately $14,497.70 of outstanding loans against the life insurance policies referred to above. The May 2, 1969 agreement required petitioner to reduce the loan balance to $11,372.94, the balance in November 1967 when petitioner and Miriam discussed separation and divorce with their attorney friend, by making payments of $900 per year until the loan balance was reduced to the required figure. It was further provided in the May 2, 1969 agreement that petitioner was not to borrow against or encumber the policies, was to make all interest payments, timely, on loans and was to pay the premiums on the policies. Miriam did not receive the right to change the beneficiaries of the policies, to borrow against the policies, or to surrender the policies for their cash-surrender value. The dividends flowing from those insurance policies which paid dividends following the date of the divorce decree were applied by petitioner to reduce the annual premium payments due on those policies. There was no assignment of any of the *159 policies to Miriam at any time either in 1969 or thereafter, although she did have the possession of the policies. Under the May 2, 1969 agreement, petitioner was also required to maintain a Blue Cross or comparable policy for the benefit of Miriam and to pay all her reasonable medical and dental expenses until her death or remarriage or until petitioner's death. Petitioner further agreed to pay all outstanding obligations of the parties thereto incurred prior to February 8, 1969. For the years 1969 and 1970 petitioner claimed $17,132.16 and $14,147, respectively, as deductions for alimony. Of these amounts, respondent disallowed the following sums: Disallowed for 1969
Payments made prior to May 2, 1969
separation agreement
$2,700.00
Life insurance payments [3]
2,267.66
Unknown or unsubstantiated [4]
727.32
Blue Cross (unsubstantiated) [5]
89.21
Total disallowed in 1969
$5,785.03 [6]
*160 Disallowed for 1970
Life insurance payments [7]
$2,294.26
Alimony paid in 1971 [8]
2,201.18
Life insurance loan repayment
900.00
$5,395.44
OPINION The first issue for decision is whether premiums paid by petitioner pursuant to a separation agreement and a divorce decree for insurance on his life are deductible by petitioner under section 215. Pursuant to the separation agreement incorporated into the divorce decree, petitioner's former wife Miriam was the irrevocable sole and primary beneficiary until her death or remarriage. After the occurrence of either event, assuming petitioner was still alive, the insurance was to serve as collateral security for the payment of remaining sums owed by petitioner under the separation agreement. Section 215 provides in part: SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of *161 which is made within the husband's taxable year. It is thus clear from the above language that resolution of the question at hand turns upon the includability of the premium payments in Miriam's income under section 71. [9]
*162 It is well-settled that, where the wife is not the complete owner of an insurance policy but is only a contingent beneficiary, the premiums paid by the husband on that policy pursuant to a separation agreement or divorce decree are not income to the wife or deductible by the husband. Florence H. Griffith,35 T.C. 882, 889-890 (1961); James Parks Bradley,30 T.C. 701, 707-708 (1958) and Beulah Weil,22 T.C. 612, 619-620 (1954), affirmed on this issue sub nom.Charles S. Weil v. Commissioner,240 F. 2d 584 (2d Cir. 1957), certiorari denied 353 U.S. 958 (1957). It is also clear that where the insurance policy merely provides security for continued alimony or support payments in the event of the husband's death, premium payments by the husband are not deductible as alimony. Lilian Bond Smith,21 T.C. 353, 364 (1953); F. Ellsworth Baker,17 T.C. 1610, 1615 (1952), affirmed on this issue 205 F. 2d 369 (2d Cir. 1953). We think it beyond peradventure that the premium payments under consideration here are not alimony within the contemplation of the tax law. *163 Clearly, Miriam was only a contingent beneficiary, the contingency being her surviving petitioner without having remarried. See Lilian Bond Smith,supra at 364. It was petitioner, and not Miriam, who was the owner of the insurance policies in question. While Miriam was the irrevocable sole and primary beneficiary, she received none of the incidents of ownership of the policies. She could not change the beneficiaries, borrow against the policies or surrender them for their cash-surrender value. In fact, petitioner received the dividends from those policies which paid them. The policies themselves were never assigned to Miriam and possession of them by her is not enough to make her the owner of them. See James Parks Bradley,supra at 708. In the event of Miriam's death or remarriage during petitioner's life the insurance policies are then intended to serve merely as security by the express terms of the May 2, 1969 separation agreement. This additional use of the policies after the occurrence of Miriam's death or remarriage and before petitioner's death does not alter the contingent nature of Miriam's interest in the policies. Under the circumstances *164 of this case we think Miriam did not actually or constructively receive the sums paid as premiums by petitioner; nor do we think Miriam received any ascertainable economic benefit from the premium payments. Because of the contingencies involved herein and the lack of incidents of ownership in Miriam any economic benefit received by her is incapable of ascertainment. See Seligmann v. Commissioner,207 F. 2d 489, 494 (7th Cir. 1953), reversing a Memorandum Opinion of this Court. [10] We further conclude that petitioner retained a substantial interest in the policies. Accordingly, we hold that the premium payments are not includable in Miriam's income or deductible by petitioner. The second issue for decision is whether loan repayments made by petitioner pursuant to the May 2, 1969 separation agreement incorporated into the divorce decree on the above-mentioned insurance policies are deductible under section 215. We do not see how the loan repayments in question *165 can fare any better than did the premium payments themselves. Again Miriam did not actually or constructively receive these payments and any economic benefit she may have received from them is just as remote and incapable of ascertainment as is any benefit from the premium payments. While we do not say that the deductibility of loan repayments necessarily rises with the deductibility of premium payments, we do think the facts of this case dictate that the loan repayments must fall with the premium payments. The third issue for decision is whether the letter written by petitioner to Miriam on February 8, 1969 is a "written separation agreement" which was executed by the parties as contemplated by section 71(a)(2). After examining the letter we conclude that it does not constitute a written agreement executed by the parties. Rather, it was at best a unilateral offer, signed only by petitioner, to make support payments to Miriam or a statement of the payments he was willing to make. Estate of Millard D. Hill,59 T.C. 846, 856-857 (1973). Neither the fact that Miriam accepted and cashed the checks sent to her nor the fact that Miriam's attorney told petitioner he felt *166 the terms in the letter were fair is of any aid to petitioner's cause. See Harry L. Clark,40 T.C. 57 (1963). While we do believe that the $2,700 payments received by Miriam were intended to be alimony, the Code expressly requires a written and executed agreement. Consequently, petitioner is not entitled to deduct the $2,700 paid to Miriam prior to the May 2, 1969 separation agreement since such payments are not includable in Miriam's income under section 71(a)(2). While no doubt small consolation, we were impressed by the sincerity of petitioner's argument and his belief in the justice of his cause. However, the statute here in issue and the cases interpreting it require a decision in respondent's favor; to hold otherwise would poorly serve the goal of this Court to distribute justice with an even hand. Decision will be entered for the Respondent.
Footnotes
1. All Code references are to the Internal Revenue Code of 1954 as amended, unless otherwise indicated.↩
2. $42.81 of this amount was to pay for expenses of Judy Auerbach, a child of petitioner and Miriam.↩
3. Of this amount respondent determined that $214.17 was unsubstantiated. We note here also that of this amount of $2,267.66, it appears that at least $348.30 was paid by petitioner prior to the execution of the May 2, 1969 separation agreement. ↩
4. Petitioners concede that they are not entitled to a deduction for this amount. ↩
5. Petitioners presented neither evidence at trial nor argument on brief in support of their deduction of this sum. Consequently we deem such issue conceded. ↩
6. $5,785.03 is the amount of petitioner's claimed alimony deduction which respondent disallowed in his notice of deficiency and the above schedule was stipulated to. However, we note that the sum of the individual amounts adds up to $5,784.19.↩
7. Of this amount respondent determined that $194.70 was unsubstantiated. ↩
8. Petitioners concede that they are not entitled to a deduction in 1970 for this amount.↩
9. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule.-- (1) Decree of Divorce or Separate Maintenance. --If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) Written Separation Agreement.--If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.↩
10. In Leon Mandel,23 T.C. 81, 89-90 (1954), aff'd 229 F. 2d 382↩ (7th Cir. 1956), we concluded that the Seventh Circuit's reversal of our opinion in the cited case was correct.