## SELIGMANN v. COMMISSIONER OF INTERNAL REVENUE.
### No. 10836.

United States Court of Appeals
Seventh Circuit.

Oct. 19, 1953.

Wilbur A. Giffen, Chicago, Ill., Kix Miller, Baar & Morris, Chicago, Ill., of counsel, for petitioner.

H. Brian Holland, Asst. Atty. Gen., Joseph F. Goetten, Ellis N. Slack, Walter Akerman, Jr., Sp. Assts. to Atty. Gen., for respondent.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

This is a petition to review a decision of the Tax Court which sustained the action of the Commissioner of Internal Revenue in determining a deficiency in petitioner's personal income tax for the taxable year 1943. By reason of the provisions of the Current Tax Payment Act of 1943, the taxable year of 1942 is also involved, with a deficiency determined against petitioner upon the same basis as that employed for the year 1943. The Commissioner's determination resulted by adding $1,817.00 for the year 1942, and $1,864.00 for the year 1943, to the amount of income reported by petitioner for those years. The Commissioner in his notice of deficiency explained the additional income for 1942 as follows: "Your taxable income for the year 1942 has been increased by the amount of $1,817.00. It is held that the above amount, which

consists of premium payments made by Leon Mandel, your former husband, on life insurance policies, in which you have a beneficial interest, constitutes taxable income to you." The same explanation was given by the Commissioner for increasing petitioner's income for the year 1943, in the amount of $1,864.00.

The additions to petitioner's reported income for the years in question were made under § 22(k) of the Internal Revenue Code, Title 26 U.S.C.A. § 22(k), which provides, so far as here relevant: "In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments * * * received subsequent to such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife * * *." We also note that § 23(u) of the same Revenue Code provides for deductions from gross income, "In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year."

The deficiency determined by the Commissioner against petitioner was challenged in the Tax Court, with a decision adverse to petitioner, from which the review comes to this court. As is obvious from what has been said, the question for decision is whether the Tax Court erred in holding that life insurance premiums paid by petitioner's former husband in 1942 and 1943, in conformity with a separation agreement between the parties, constitute taxable income to petitioner as alimony paid to her under the provisions of § 22(k).

Petitioner and her former husband, Leon Mandel, were married April 30, 1924, and separated in August, 1932. Two children were born of this marriage, Noel, February 8, 1927, and Leon, July 31, 1928. On November 29, 1932, petitioner and her husband entered into a written agreement incident to divorce proceedings, which culminated on December 29, 1932 in a divorce decree. At the time of the separation agreement both petitioner and her then husband were thirty years of age, one of the children was five and the other four years of age. On January 27, 1946, petitioner was married to George Seligmann. (We shall continue, however, to use the term "husband" as meaning petitioner's first husband, Leon Mandel.)

The separation agreement entered into between petitioner and her husband covers some twenty-three pages of the printed record, and we see no necessity to burden this opinion by setting it forth verbatim. Paragraph 4 is principally involved in the instant proceeding. Prior to a consideration of that paragraph, a sketchy statement of other provisions may be of some pertinency. The agreement makes detailed provision for the care, custody, control and maintenance of petitioner and the children, among which is the husband's agreement to pay petitioner during her life $18,000.00 per annum in equal monthly installments for the support and maintenance of petitioner and the two children, with numerous conditions attached, including a reduction in the annual amount to $10,000.00 in the event of petitioner's remarriage. In a proceeding instituted by the husband, it has been judicially determined from a consideration of the provisions of the separation agreement as a whole that $8,000.00 of these annual payments should be treated as alimony received by the instant petitioner within the purview of § 22(k). Under this ruling the husband was entitled under § 23(u) to a deduction from his income in the amount of $8,000.00, rather than in the amount of $18,000.00, which he claimed. See Mandel v. Commissioner of Internal Revenue, 7 Cir., 185 F.2d 50, affirming the Tax Court memorandum decision on said issue. By reason of this ruling petitioner has included in taxable income reported the sum of $8,000.00. The Tax

Court also determined, as shown by the same memorandum, contrary to the contention of the Commissioner, that the insurance premiums paid under paragraph 4 of the agreement (those presently in issue) were deductible by the husband under § 23(u). The Commissioner sought no review on this point.

The agreement in its broad aspects provided for the creation of a trust fund, partly during the lifetime of the husband and partly at his death, in the amount of $300,000.00, with a designated trustee, for the benefit of petitioner and the children after the death of the husband, subject to certain conditions set forth in the agreement. The contributions to the trust fund were to be made in the following manner:

(1) As provided in paragraph 5, the husband was required to deposit with the trustee mortgage bonds in the par amount of $100,000.00, which was done. The income received from such bonds by the trustee was to be paid to the husband during his lifetime, with the proviso that if the husband survived petitioner and the children (and the descendants of the children) the said bonds were to revert to the husband as his absolute property. It was also provided that the trustee might use the income from such bonds to make good any default by the husband under the agreement, including that of the husband's obligation to pay the annual premiums upon the policies of insurance referred to in paragraph 4 (the payments here involved).

(2) The husband was required to make a bequest in his will of $100,000.00 cash payable to the designated trustee, the income from which was to be distributed by the trustee under the same terms and conditions as were designated for the distribution of other income arising from the trust.

(3) This brings us to paragraph 4, the provisions of which give rise to the instant controversy. By this paragraph the husband was required to and did deposit with the trustee two ordinary life insurance policies on his life in the aggregate face amount of $100,000.00. The designated beneficiaries in these policies were changed to the trustee. It was provided: "In the event of the husband's death, the proceeds of the policies shall be retained by the insurance company upon the following conditions: The entire income of said principal sum shall be paid to the wife during her lifetime so long as she is not remarried. While the wife is remarried, the income shall be paid in equal parts to the wife and the surviving children or child or the issue of the children, per stirpes, and upon the wife's death, said principal and all accumulations shall be paid to the children or their survivor in equal parts or to their surviving issue, per stirpes. If, while the wife is remarried, no children shall survive the wife, or in the event that while she is remarried, both children shall be deceased, then one-third (1/3) of the income shall be payable to the wife for her life, and the balance of the income shall be paid as the husband may by his last will and testament direct, or, in the absence of such direction, to the heirs at law of the husband as they would be determined under the statutes of the State of Illinois concerning the devolution of personal property as the same is now enacted, and after the wife's death, the principal and all accumulations shall be paid as the husband shall direct by his last will and testament, and, in the absence of such direction, to the heirs at law of the husband as above defined."

It was also provided that in the event of the death of the husband after that of the wife, the proceeds of said policies when collected should be divided equally between the two children or, if they should both be deceased without having left any issue, "then the proceeds shall be paid as directed in the last will and testament of the husband, and, in the absence of such direction, to the heirs at law of the husband in the proportion in which they would take under the statutes of the State of Illinois concern-

ing the devolution of personal property as is now enacted." And it was provided that in the event of petitioner's death and that of both children without leaving issue surviving either of them, prior to the death of the husband, the policies held by the trustee should upon demand be delivered to the husband, as and for his absolute property, free and clear of the conditions and limitations imposed by the trust. Finally, it was provided, "The husband agrees to maintain said policies of insurance so long as either the wife or the children or their survivor or any of the issue of the children shall be alive, and to pay the premiums hereafter from time to time becoming due on said insurance policies, in apt time * * *."

In compliance with the obligation lastly stated, the husband in the year 1942 paid premiums in the amount of $1,817.-00, and in 1943 premiums in the amount of $1,864.00. It is these payments by the husband upon which the Commissioner has determined deficiencies in the petitioner's income for those two years on the theory that they were "periodic payments" of alimony by the husband to the petitioner and, therefore, constituted income to her under § 22(k).

We are aware of no case where a court of review has considered whether the payments of insurance premiums by a husband for the benefit of the wife were alimony payments and, therefore, income within the meaning of the relevant section. There are a number of cases which have been before the Tax Court and the Courts of Appeals relative to a husband's right to deduct such payments under § 23(u). Those cases have turned largely on the issue as to whether the policies of insurance upon which such premiums were paid were deposited as security for the performance of a separation agreement. If so, they were held not to be deductible. Blumenthal v. Commissioner, 13 T.C. 28, affirmed, 3 Cir., 183 F.2d 15; Carmichael v. Commissioner, 14 T.C. 1356; Gardner v. Commissioner, 14 T.C. 1445, affirmed, 6 Cir., 191 F.2d 857; Baker v.

Commissioner, 17 T.C. 1610, affirmed, 2 Cir., 205 F.2d 369. On the other hand, if the policies were not deposited for security purposes and the premium payments were for the benefit of the wife, they have been held to be deductible by the husband. Stewart v. Commissioner, 9 T.C. 195; Estate of Hart v. Commissioner, 11 T.C. 16, and Carmichael v. Commissioner, supra. It is conceded here, as it was before the Tax Court, that the premiums paid by the husband under paragraph 5 of the agreement did not constitute alimony payments to petitioner for the reason that under the terms of that paragraph the policies were deposited for security purposes. On the other hand, it is argued by the Commissioner that the policies described in paragraph 4 (those in issue) were not deposited for that purpose and, hence, premiums paid thereon constituted alimony payments to petitioner. Petitioner argues that when the agreement is considered as a whole, the policies deposited under paragraph 4 were likewise for security purposes. In this connection, it is pertinent to note that the provision for the distribution of the trust fund at the time of the husband's death, resulting in part from the provisions of paragraph 4 and in part from the provisions of paragraph 5, is precisely the same.

Contrary, however, to the rationale of the Tax Court decision, we have reached the conclusion that a decision in this case can not properly be made to turn upon a resolution of this narrow issue but that it depends upon a more fundamental issue, that is, whether petitioner in the taxable years in question received cash, either actually or constructively, or property of ascertainable value.

At the time of the enactment of §§ 22(k) and 23(u), the Senate Finance Committee Report No. 1631 (77th Congress, 2nd Session) stated: "Section 23 (u), as well as section 22(k), contemplates the treatment of alimony payments as if the husband and wife were *on a cash receipts and disbursements basis,* that is, the deduction is allowed

the husband only for actual payment within his taxable year and the wife includes in her income for a taxable year under section 22(k) only such periodic payments described therein as are *actually received* during such taxable year (including, of course, the constructive receipt or payment of amounts unqualifiedly subject to the demand of the wife or husband, as the case may be). (Italics supplied.)"

Regulation 111, § 29.22(k)1–a, relative to the wife's taxability of "periodic payments" under § 22(k) states: " * * * the wife is to be treated as if she makes her income tax returns on the cash receipts and disbursement basis, regardless of whether she normally makes such returns on the accrual basis." Regulation 111, § 29.42–2, relative to the receipt of constructive income, provides: "Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. * * *"

Certainly petitioner did not actually receive the cash payments in controversy because they were made by the husband directly to the insurance company. And it would appear that she did not receive such payments constructively, under the Commissioner's own definition of that term. That the Commissioner is hard pressed on this score is forcibly demonstrated not only by his attempted answer but by the authorities upon which he relies. He states in his brief: "We find nothing to indicate that, in breadth, the concept of income intended in Section 22(k) with respect to the receipt of periodic alimony income by a wife is in anywise less than the concept intended by Section 22(a) of the Code with respect to other types of income." For the present purpose we assume, without deciding, that such is the case. The Commissioner proceeds: "It is well settled that, contrary to the taxpayer's contentions, a realization of taxable income is not confined to instances where cash in hand is received or cash is constructively received." Cited in support of this statement are Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864; Helvering v. Horst, 311 U.S. 112, 61 S. Ct. 144, 85 L.Ed. 75, and Commissioner v. Smith, 324 U.S. 177, 65 S.Ct. 591, 89 L.Ed. 830.

In the Bruun case, the court held that a new building erected by a lessee with a value of some $51,000.00 more than the old building which it supplanted represented taxable gain to the owner of the premises for the year in which the premises were repossessed by him. The court stated, 309 U.S. at page 469, 60 S.Ct. at page 634, 84 L.Ed. 864: "While it is true that economic gain is not always taxable as income, it is settled that the realization of gain need not be in cash derived from the sale of an asset. Gain may occur as a result of exchange of property, payment of the taxpayer's indebtedness, relief from a liability, or other profit realized from the completion of a transaction. The fact that the gain is a portion of the value of property received by the taxpayer in the transaction does not negative its realization."

In the Horst case, it was held that the owner of negotiable bonds, who reported income on the cash receipts basis and who detached interest coupons on said bonds before their due date and delivered them as a gift to his son who collected them in the same year, realized taxable income. The court, after pointing out that it has been "consistently recognized that receipt in cash or property is not the only characteristic of realization of income to a taxpayer on the cash receipts basis", stated, 311 U.S. at page 115, 61 S.Ct. at page 146, 85 L. Ed. 75: "Where the taxpayer does not

receive payment of income in money or property realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him."

In the Smith case, an employee was given an option to purchase stock from his employer at a price not more than the value of the stock at the time the option was given. Stock was purchased by the employee in subsequent years after it had increased in value, but at the option price. It was held that the difference between the purchase price and the option value of the stock was taxable income to the employee in the year purchased. The court stated, 324 U.S. at page 181, 65 S.Ct. at page 593, 89 L.Ed. 830: "Section 22(a) of the Revenue Act is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected."

Moreover, and more important, these cases, consistent with what we think is the universal rule, teach that realization of taxable gain must occur in the year during which it is sought to be taxed. This is so whether the realization comes from the receipt of cash, actual or constructive, or by the acquirement of property, and in the latter case the realization occurs "when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him." Horst, supra. In any event, realization of economic gain as a prerequisite to its taxability must be capable of ascertainment in extent or amount.

Applying the rationale of these cases to our instant question, we are unable to discern how it can be thought that petitioner realized a taxable economic gain during the years in question. Certainly, as noted, she received no cash, either actually or constructively, and it would appear equally certain that she received no property capable of measurement or ascertainment. The most that can be said is that the right which she

acquired at the time the separation agreement was executed was preserved to her from year to year, including those here involved, by the husband's payment of the premiums on his life insurance policies which he was obligated to make. After the payments were made she had no different or greater right than she had before. In any event, whatever right she had or acquired was dependent upon so many contingencies that its value could not be measured or ascertained during the taxable year. And it was a matter of rank speculation or conjecture as to whether petitioner would ever realize any economic gain. The only benefit which we are able to discern accruing to petitioner during the taxable years was an aid to her peace of mind, which could be expected to result from knowledge that at some unforeseeable time in the future she might and the children certainly would benefit from the proceeds of the insurance policies. Under the terms of the agreement she never could receive one cent unless she lived longer than her husband, and even then the amount of or the extent of the benefit would depend upon whether she was remarried. Mere peace of mind or the satisfaction which stems from knowledge that protection may be of benefit in the future does not constitute taxable economic gain.

We need not cite or discuss a number of cases relied upon by the Commissioner as being "somewhat analogous," wherein it has been held that premiums on life insurance policies purchased and paid for by an employer for the benefit of employees constitute taxable income to the employees on the theory that they represent additional compensation. The transactions involved in these cases take on a variety of forms, but generally such policies are delivered to or become the property of the employees with all the rights incident to possession and ownership, such as the privilege to borrow on the policies or to surrender them and receive their cash or loan value. We are convinced from a study of this class of cases that they are of no benefit to the

Commissioner in the instant situation. Here the petitioner had no dominion or control over the policies, was not named as a beneficiary and had no authority to change or appoint a beneficiary. Neither did she acquire any right or interest in the increased or loan values of the policies resulting from the payments sought to be taxed. In this connection it is interesting to note that the premium payment for the year 1943 in the amount of $1,864.00 increased the cash surrender value of the policies by $1,464.00. From a monetary standpoint, it was immaterial to petitioner whether the premium payments increased the cash or loan value of the policies $1.00 or $1,000.00, because there was no possibility under the agreement that any of this increased loan value could ever accrue to her.

■ There runs through the opinion of the Tax Court as well as in Commissioner's argument here the disturbing suggestion that the husband has been permitted by the Tax Court under § 23 (u) to deduct the premium payments here involved from his gross income, and that such being the case, petitioner should be required to include them as alimony payments to her under § 22(k). We can see that this situation may be embarrassing to the Commissioner and the Tax Court, but we do not discern how we can be of any aid. Of course, it is not claimed and could not be with any reason that the action of the Tax Court in favor of the husband is *res judicata* of the rights of the instant petitioner. She was not a party to the proceeding before the Tax Court in which her husband was involved and, of course, is not bound by any decision in that case. We would think that the regrettable situation which has developed could have been avoided by making petitioner a party to the proceeding in the Tax Court between the Commissioner and the husband so that the rights of both parties could have been adjudicated at the same time. Moreover, while the rights of the husband to a deduction under § 23(u) are by express language

made dependent upon the obligation imposed upon the wife under § 22(k), we do not think it necessarily follows that the converse of that proposition is true. At any rate, there is nothing in the language of § 22(k) which makes the obligation of the wife dependent upon the right of the husband under § 23(u). So far as the obligation of the wife is concerned, we think we must treat § 22(k) as if it stood alone, independent of § 23(u). What, if any, bearing our decision has upon the husband's rights under § 23(u) we do not decide; in fact, we would have no right to do so because he is not a party to the instant proceeding.

The decision of the Tax Court is reversed, with directions that the asserted deficiencies in petitioner's income tax for the years 1942 and 1943 be eliminated.