Neely B. Taylor, Jr., Petitioner, *v.* Commissioner of Internal Revenue, Respondent

William Eskridge and Betty Jean Eskridge, Petitioners, *v.* Commissioner of Internal Revenue, Respondent

Docket Nos. 5123–63, 5138–63.    Filed October 27, 1965.

*C. H. Richardson, Jr.,* for the petitioner in docket No. 5123–63.
*Lee S. Jones,* for the petitioners in docket No. 5138–63.

*Dennis M. Feeley,* for the respondent.

Tannenwald, *Judge:* Respondent determined deficiencies in the income taxes of the petitioners as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 5123–63 | Neely B. Taylor, Jr. | 1960 | $60.80 |
|  |  | 1961 | 659.42 |
| 5138–63 | William Eskridge and Betty Jean Eskridge | 1961 | 507.59 |

These cases, consolidated for trial, involve questions relating to dependency exemptions and alimony: (1) Whether, during the year 1961, the petitioner, Neely B. Taylor, Jr., or the petitioners, William Eskridge and Betty Jean Eskridge, furnished more than one-half the support of three minor children born of the former marriage of Neely B. Taylor, Jr., and Betty Jean; and (2) whether certain payments made by Neely B. Taylor, Jr., during the years 1960 and 1961 constituted alimony.

Respondent disallowed the payments deducted by Taylor as alimony in his 1960 return. For 1961, respondent similarly disallowed such payments as deductions to Taylor and also disallowed him dependency

exemptions for the three children. Respondent for 1961 included the payments by Taylor as alimony in Betty Jean's income and disallowed her dependency exemptions for the three children. The year 1960 is not before us as far as Betty Jean is concerned.

Respondent concedes that either Taylor or Betty Jean is entitled to the dependency exemptions and that if the payments by Taylor constitute alimony and are therefore includable in Betty Jean's income, they are deductible by Taylor.

### FINDINGS OF FACT

The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioner Neely B. Taylor, Jr. (hereinafter sometimes referred to as Taylor), is an individual residing in Louisville, Ky. He filed individual Federal income tax returns for the years 1960 and 1961 with the district director of internal revenue at Louisville, Ky.

Petitioners William Eskridge and Betty Jean Eskridge (hereinafter referred to as Betty Jean) are husband and wife residing in Valley Station, Ky. They filed a joint Federal income tax return for 1961 with the district director of internal revenue at Louisville, Ky.

Prior to August 12, 1960, Betty Jean was the wife of Neely B. Taylor, Jr. Three children were born of this marriage, namely, Robert Neely Taylor, born October 26, 1948, Linda Jean Taylor, born April 19, 1950, and Thomas Wayne Taylor, born November 1, 1952.

Betty Jean and Taylor were divorced on August 12, 1960. Pursuant to an agreement dated June 27, 1960, and incorporated into the divorce decree, Betty Jean was awarded custody of the three children with right of visitation in their father. Taylor was required to pay Betty Jean $100 per month for the support and maintenance of the three children, such payments to be reduced by one-third as each child became 21 years of age, married, or became self-supporting. Taylor further agreed to carry Blue Cross and Blue Shield insurance for hospital and medical care of the children.

Taylor and Betty Jean were the owners in "joint survivorship" of the residence of the parties located at 9216 Donerail, Valley Station, Ky. Under the agreement of June 27, 1960 (which was incorporated into the divorce decree), it was agreed that such ownership should continue and that, as "alimony," Betty Jean and the children should continue to live in this residence and that Taylor would pay (1) the balance of the mortgage loan on the residence in the amount of $78 per month, inclusive of interest, amortization, taxes, and insurance; (2) the balance of a garage construction loan at the rate of $15.21 per month; and (3) the balance of a bank loan for storm windows and doors on said property at the rate of $7.87 per month. In the event

Betty Jean remarried, or when all the children reached the age of 21, married, or became self-supporting, the real property was to be sold and the net proceeds divided equally between Betty Jean and Taylor.

During the years 1960 and 1961 (from June 27, 1960, to and including June 30, 1961), pursuant to the agreement dated June 27, 1960, Taylor made the required payments on the mortgage loan, garage construction loan, and loan for the storm windows and doors in connection with the residence at 9216 Donerail.

Betty Jean and the three children lived together in the residence at 9216 Donerail throughout the years 1960 and 1961. Betty Jean and William Eskridge were married on July 1, 1961, and lived together in the residence at 9216 Donerail during the remainder of 1961. Taylor made no payments on the loans after July 1, 1961, and the house was later sold.

During the year 1961, Taylor paid Betty Jean $1,200 for the support and maintenance of their minor children. He also paid $79.20 premiums on Blue Cross and Blue Shield hospital and medical-care insurance for the benefit of the three children.

The total amount spent for the support of the children during the taxable year 1961 was in excess of $2,600. Of this amount, Betty Jean contributed more than one-half.

OPINION

On brief, respondent stated that either Taylor or Betty Jean should be allowed the dependency exemption for each of the three minor children. While the evidence as to the total amount furnished for the support of the children and the relative contributions by Taylor and Betty Jean is not complete, we are satisfied on the basis of the record that Betty Jean contributed more than one-half of such support. Accordingly, we hold that she is entitled to the dependency exemption.

The second issue involves the question whether certain payments required to be, and, in fact, made by Taylor during the last 6 months of 1960 and the first 6 months of 1961 on the home mortgage and improvement loans represented alimony deductible by him under the provisions of section 215(a)[1] and includable in the gross income of Betty Jean under the provisions of section 71.

Section 215(a) provides that a husband shall be allowed as a deduction amounts includable under section 71 in the gross income of the wife, payment of which is made within the husband's taxable year. Section 71 provides that, if a wife is divorced from her husband, the wife's gross income includes periodic payments received in discharge of a legal obligation which, because of the marital or family relationship,

---

[1] Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended.

is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce.

At the outset, it should be noted that the fact that the parties described these payments as "alimony" in the separation agreement is not determinative. *Piel* v. *Commissioner*, 340 F. 2d 887 (C.A. 2, 1965), affirming a Memorandum Opinion of this Court; *Merchants' L. & T. Co.* v. *Smietanka*, 255 U.S. 509 (1921). Similarly, payments which realistically involve only the settlement of property rights as between husband and wife are not considered alimony. *John Sidney Thompson*, 22 T.C. 275 (1954); sec. 1.71–1(c)(4), Income Tax Regs. Nevertheless, under appropriate circumstances periodic payments by the husband can qualify as alimony even though such payments enhance a property interest of the wife. Cf. *United States* v. *Davis*, 370 U.S. 65 (1962); *Hyde* v. *Commissioner*, 301 F. 2d 279 (C.A. 2, 1962).

Where property is owned under "joint survivorship," as was the case here, neither party can take any action without the other party's consent, e.g., increasing the mortgage, which would impair the value of the other party's equity. Cf. *James Parks Bradley*, 30 T.C. 701 (1958). Moreover, the property was required to be sold in the event of Betty Jean's remarriage, the attainment of age 21 by all the children, or their marriage, or their becoming self-supporting. All of these eventualities were more likely to occur than Betty Jean's death and when they occurred the property was required to be sold and Betty Jean was entitled to one-half the net proceeds. One-half of each payment of mortgage principal by Taylor thus increased the amount which she would potentially receive from any sale. Even the portion of the mortgage payment which represented insurance protected Betty Jean's potentiality of realization. Cf. *Seligmann* v. *Commissioner*, 207 F. 2d 489 (C.A. 7, 1953).

In the usual situation, where there is coownership of property, such as involved herein, the husband and wife are personally liable on the mortgage loan. Each payment by one party *pro tanto* discharges the legal obligation of the other party to the lender. Under local law each party is generally entitled to a contribution of one-half of any mortgage payment from the other. 2 Tiffany, Law of Real Property, sec. 460 (3d ed. 1939). In such circumstances, an agreement and decree imposing the obligation for the entire mortgage payments on the husband cuts off the husband's right of contribution which would otherwise arise each time a payment was made. As a result, each payment by the husband appears to confer a current benefit upon the wife by discharging *pro tanto* her legal obligation to the lender, and relieving her of her obligation to contribute.

Even in the absence of personal liability, a right of contribution by one coowner against the other may exist, albeit enforceable only against the latter's interest in the property itself. Tiffany, *supra*.

Here, too, an agreement and decree such as are involved herein effectively cut off the husband's right of contribution. Moreover, although no legal obligation of the wife is discharged by a mortgage payment, a current benefit is conferred upon her through decreasing the amount of the encumbrance against the property which she would have to discharge to protect her interest in the event that she became the sole owner, e.g., in the event of the husband's death. Cf. *Hyde* v. *Commissioner, supra.*

Unfortunately, in the present case, none of the documents evidencing any of the loans was placed before us, so we are unable to determine whether Betty Jean had any personal liability to the lenders. The only document submitted was the payment book of the Greater Louisville First Federal Savings & Loan Association; this book merely categorizes Taylor and Betty Jean as borrowers without indicating whether there was any personal liability beyond the property itself, i.e., for any deficiency in the event of sale. Nor is there any evidence indicating that Taylor may not at some time prior to the agreement and decree have waived his right of contribution. Moreover, Betty Jean's ability to realize any benefit in the event of sale was at best speculative. It depended upon whether the proceeds realized were in excess of any then-existing encumbrances and the expenses of sale. Her ultimate receipt of proceeds was so exposed to destruction [2] as to make it impossible to find that she constructively received the payments as they were made. Cf. *Florence H. Griffith*, 35 T.C. 882 (1961). Of course, absent a finding that the payments were includable in the wife's income under section 71, the husband would not be entitled to a deduction under section 215(a).[3]

In view of the foregoing, we are compelled to hold that the payments by Taylor on the three loans during 1960 and 1961 are not includable in Betty Jean's income and therefore not deductible by him as alimony.[4]

---

[2] There is a statement in the record that the original mortgage was for the full value of the house. This, coupled with the statement that there were no net proceeds on the ultimate sale, indicates that neither Taylor nor Betty Jean ever had any equity. Obviously, if the unpaid balance of the mortgage had been substantially less than the value of the property the mortgage payments would have meaningfully increased Betty Jean's equity.

[3] In view of our ultimate decision in this case, we do not reach the questions as to the effect, if any, of the existence of a prepayment clause in the mortgage or of the fact that the remaining term of the mortgage may be more or less than 10 years. See sec. 71(c), and sec. 1.71–1(d), Income Tax Regs.

[4] On brief, respondent urged that this case is controlled by decisions involving the treatment of premiums paid by a former husband on insurance on his life in which the former wife has an interest, citing *Seligmann* v. *Commissioner*, 207 F. 2d 489 (C.A. 7, 1953); Rev. Rul. 58–52, 1958–1 C.B. 29, as modified by Rev. Rul. 62–38, 1962–1 C.B. 15; and *Florence H. Griffith*, 35. T.C. 882 (1961). We do not believe that the insurance premium cases are necessarily determinative of the treatment of mortgage payments as alimony. In those cases, the wife has a mere expectancy, whereas, in situations involving mortgage payments, the wife may well realize a measurable current benefit because of the existence of a legal obligation of both spouses to the lender and/or a right of contribution *inter sese.* Respondent seemingly did not consider these distinctions when he promulgated Rev. Rul. 58–52 and Rev. Rul. 62–38.

Finally we note that in a cotenancy, regardless of the form of common ownership, there is a right of occupancy separate and distinct from the ownership of the property itself. Cf. *Lilly* v. *Smith*, 96 F. 2d 341 (C.A. 7, 1938); sec. 86.19(h), Regs. 108; 2 Tiffany, Law of Real Property, secs. 418, 435 (3d ed. 1939).

By virtue of the agreement and decree, Taylor was required to give up his right in this regard and Betty Jean and the children were given *exclusive* occupancy.

The rental value of the right to occupy premises can, of course, constitute taxable income. Where such value is furnished in discharge of a legal obligation (as is the case where a husband is obliged to furnish living quarters to his former wife under a divorce decree), the person furnishing the same may be entitled to a deduction but that deduction may be offset by an equivalent amount of realization of income. *Reynard Corporation*, 30 B.T.A. 451 (1934) and 37 B.T.A. 552 (1938), appeal dismissed (C.A. 2, 1938).

The record in this case is devoid of any evidence as to the nature or value of Taylor's right of occupancy. Nor do we believe that we can equate any portion of the loan payments to such value without such evidence. This is particularly true where the property is sold at or about the same time for less than the mortgage—far less, for all the record shows. We therefore do not reach such questions as whether the relinquishment of such right of occupancy constitutes "payment" within the meaning of sections 71(a) and 215(a); whether, if there is "payment," such right of occupancy is depreciable on the ground that the realization of income from the "payment" qualifies the property as being held for the production of income under section 212; or whether such "payment" is periodic or constitutes the nonrecurring receipt of a property interest in the nature of a life estate, thus falling outside the alimony sections of the Internal Revenue Code, as appears to be the case where the wife acquires such right from the divorced, sole-owner husband. Compare *James Parks Bradley, supra; Pappenheimer* v. *Allen*, 164 F. 2d 428 (C.A. 5, 1947). We merely hold that, in this case, there is no income to Betty Jean nor deduction to Taylor stemming from the former's right of *exclusive* occupancy.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

Drennen, *J.*, concurs in the result.

———

Mulroney, *J.*, concurring: I concur with the result reached in the majority opinion. However, on the second issue, I see no need to canvass the law with respect to ownership in joint survivorship, or comment on the possible personal liability of Betty Jean with respect to the mortgage and improvement loans, or indicate that maybe the

evidence is insufficient to warrant holding Taylor sustained his burden of proof.

Taylor can only support the deductions of his mortgage and improvement loan payments under section 215(a), I.R.C. 1954, by arguing they constitute periodic payments for Betty Jean's support (under sec. 71(a)(1), I.R.C. 1954) because, if the payments had not been made, foreclosure would result and that would deprive her of her free occupancy of the home. In *James Parks Bradley*, 30 T.C. 701, 707, we found such an argument "too tenuous to have substance."

TIETJENS, *J.*, agrees with this concurring opinion.

———

SIMPSON, *J.*, concurring: I concur with the results reached in the majority opinion, but I do not agree with the reasons for concluding that the payments made by the petitioner Taylor on the mortgage on the home, the garage, and the improvements are not periodic alimony payments within the meaning of sections 71 and 215.

As I understand the majority opinion, it concludes that the mortgage payments do not constitute alimony because of a failure of proof. However, I believe that we have before us a substantive question as to whether the provisions of sections 71 and 215 are to be applied when a former husband is required to make payments which benefit the former wife but when the amount of such benefit received by her during the taxable year cannot be definitely determined.

The predecessors of sections 71 and 215 were enacted to shift the tax burden on certain alimony payments from the husband to the wife.[1] These provisions contemplate two methods by which alimony payments may be provided. If a husband arranges for the payment of alimony by transferring property to a trust or otherwise the income from which is payable to his wife, such income is taxable to her but not to him, and he is not entitled to any deductions with respect to the payment of such income. If, on the other hand, the payments are made directly by the husband and received by the wife, such payments are includable in her income and deductible by him. In connection with this latter method, the legislative history reveals that Congress recognized that payments of alimony might be made indirectly for the benefit of a wife. The committee report states:

Section 23(u), as well as section 22(k), contemplates the treatment of alimony payments as if the husband and wife were on a cash receipts and disbursements basis, that is, the deduction is allowed the husband only for actual payment within his taxable year and the wife includes in her income for a taxable year under section 22(k) only such periodic payments described therein as are actually received during such taxable year (including, of course, the constructive

[1] H. Rept. No. 2333, 77th Cong., 1st Sess., p. 409 (1942).

receipt or payment of amounts unqualifiedly subject to the demand of the wife or husband, as the case may be). [S. Rept. No. 1631, 77th Cong., 2d Sess., p. 569 (1942).]

Yet, it should be emphasized that a constructive payment of alimony was contemplated only when the wife had an unqualified right to demand the payment.

Payments which are made by a husband on behalf of his former wife in accordance with a divorce decree of settlement have been the cause of much litigation. Some of such payments have been held to constitute periodic payments of alimony within the meaning of section 71. For example, when a husband pays the premiums on an insurance policy which is completely owned by the wife, the payment of such premiums constitutes the constructive payment of alimony, *Hyde* v. *Commissioner*, 301 F. 2d 279 (C.A. 2, 1962). On the other hand, when the wife is not the complete owner of the policy, such payments have been held not to constitute alimony within the meaning of section 71, *Seligmann* v. *Commissioner*, 207 F. 2d 489 (C.A. 7, 1953); *L. Mandel* v. *Commissioner*, 229 F. 2d 382 (C.A. 7, 1956); *Florence H. Griffith*, 35 T.C. 882 (1961). Similarly, when a husband was required to continue the mortgage payments on a residence which the wife was allowed to occupy, and when she would share in the proceeds of the sale of the property if, and only if, she discontinued to occupy it as a residence, this Court held that the benefits which she derived from the mortgage payments were too tenuous to be treated as periodic payments of alimony, *James Parks Bradley*, 30 T.C. 701 (1958).

The majority opinion indicates that the rules of the life insurance cases do not provide an answer for this case. Although there are factual differences, I believe that the principle laid down in those cases is consistent with the legislative history, is sound, and should be applied to this case. In *Seligmann*, the likelihood that the wife would benefit from the payment of the life insurance premiums may be less than the likelihood that the petitioner Betty Jean will benefit from the mortgage payments in this case, but should the law turn upon such a difference in probabilities? It seems to me that the holding of the life insurance cases is that the wife is not taxable unless the amount which she receives, or constructively receives, during the year can be definitely determined. This holding is consistent with the legislative history and is sound for it avoids taxing one party on a benefit which cannot be accurately and reliably measured and does not allow a deduction to another party when the amount of the payment is equally incapable of accurate measurement.

Without doubt, the petitioner Betty Jean derives some benefit as a result of the mortgage payments. So long as the petitioner Taylor

continued to make the mortgage payments, she could continue to enjoy exclusive possession of the property. If she was personally liable on the mortgage, the requirement that he make the payments relieved her of her obligation to share in that liability. Making additional payments on the mortgages continued to build an equity in the property, but whether, and to what extent, she would share in that equity depended upon many circumstances. If the petitioner Taylor died before the occurrence of the circumstances calling for a sale of the property, she would receive the entire equity; if she died before such sale and before him, she would receive none of the property; but if both he and she lived until the sale, she would receive one-half of the property. In summary, she derived some benefit by reason of the mortgage payments made by him, but the amount of that benefit was very speculative.

In conclusion, I believe that the payments on the mortgages do not constitute periodic payments of alimony within the meaning of section 71 because the amount received by the petitioner Betty Jean as a result of such payments cannot be definitely determined.

———

BRUCE, J., dissenting: First, let me say that I agree with the conclusions of the majority that the petitioner Betty Jean furnished more than one-half the total support of the three minor children during the taxable year 1961 and accordingly she and the petitioner William Eskridge are entitled to the dependency exemptions claimed by them for such children for the year 1961, and that the petitioner Taylor is not entitled to the dependency exemptions claimed by him for the three children for the year 1961.

I disagree with the majority's conclusions regarding the second issue, whether certain payments made by the petitioner, Neely B. Taylor, Jr., during the taxable years 1960 and 1961 constituted alimony.

Prior to their divorce on August 12, 1960, Taylor and Betty Jean were the owners in "joint survivorship" of a residence located at 9216 Donerail, Valley Station, Ky. They continued to so own the property after their divorce. Under the agreement dated June 27, 1960, which was incorporated in the divorce decree, it was agreed that, *as alimony*, Betty Jean and the children should continue to live in the residence at 9216 Donerail, and that Taylor would pay (1) the balance of the mortgage loan on the residence in the amount of $78 per month, inclusive of taxes and insurance; (2) the balance of the garage construction loan at the rate of $15.21 per month; and (3) the balance of a bank loan for storm windows and doors on said property at the rate of $7.87 per month. It was further provided that in the event Betty Jean remarried, or when all of the children reached the age of 21,

married, or became self-supporting, the real property was to be sold and the net proceeds divided equally between Betty Jean and Taylor. Other provisions of the agreement provided that Betty Jean was to own and have title to all the furniture and fixtures located in the house, and certain other personal property was specifically divided or allocated between the parties. The agreement further provided that it was to be "a full, final and complete settlement of any and all claims which either of the parties hereto may have against the other, including alimony and maintenance."

Betty Jean and the children lived together in the residence at 9216 Donerail throughout the years 1960 and 1961. Betty Jean and William Eskridge were married on July 1, 1961, and lived together in the residence at 9216 Donerail during the remainder of 1961. Taylor made no payments on the loans after July 1, 1961. On opening statement, not otherwise adverted to in the testimony or evidence presented, counsel for Taylor stated the house was later sold and that none of the proceeds from such sale accrued to either Taylor or Betty Jean. Presumably neither respondent nor Betty Jean disagree with this statement, since neither of their counsel mentioned it. There is no evidence as to how much the house sold for.

During the years 1960 and 1961 (from June 27, 1960, to and including June 30, 1961), pursuant to the agreement dated June 27, 1960, Taylor made payments on the mortgage loan, garage construction loan, and loan for the storm windows and doors in connection with the residence at 9216 Donerail, as follows:

*1960*

| | |
|---|---:|
| Mortgage (6 payments of $78 each) | $468.00 |
| Garage (6 payments of $15.21 each) | 91.26 |
| Storm doors and windows (6 payments of $7.87 each) | 47.22 |
| Total | 606.48 |

*1961*

| | |
|---|---:|
| Mortgage (7 payments of $78 each) | [1] $546.00 |
| Garage (6 payments of $15.21 each) | 91.26 |
| Storm doors and windows (7 payments of $7.87 each) | [1] 55.09 |
| Total | 692.35 |

[1] Includes a prepayment made on June 30, 1961.

On his tax return for 1960, Taylor claimed an exemption for each of the three minor children and also a deduction in the amount of $276.33 as alimony. The latter amount was arrived at by deducting from the total of the monthly payments made on the three house loans ($606.48) one-half of the total interest and taxes paid during the entire year ($330.15). The interest and taxes were deducted by Taylor on Schedule B of his return.

On his tax return for 1961, Taylor claimed an exemption for each of the three children and a deduction in the amount of $797.56 as alimony. The latter amount was explained in a statement attached as representing $707.56 paid on the three house loans plus $90 hospital insurance paid for Betty Jean. On brief, Taylor now concedes the $90 represented the payment of Blue Cross-Blue Shield insurance premiums for the benefit of the children and is not deductible as alimony. No deduction was claimed on this return for taxes on the real estate or interest on the loans.

On the income tax return for 1961 filed by Betty Jean and her husband, claim was made for an exemption for each of the three children and $234 was reported as alimony received by Betty Jean.

The "Short-Form" statements attached to the notices of deficiency do not set forth the bases for the deficiencies determined by respondent. All parties hereto agree, however, that in arriving at the deficiencies respondent disallowed the deductions claimed by petitioner Taylor for payment of alimony in each of the years 1960 and 1961 on the ground that the payments on the jointly owned property do not qualify as alimony for income tax purposes.

I would hold that the payments made by Taylor during the period July 27, 1960, to and including June 30, 1961, on the loans made in connection with the residence at 9216 Donerail were alimony payments deductible by Taylor in his respective taxable years, under the provisions of section 215(a) of the Internal Revenue Code of 1954, and, with respect to those paid in 1961 (Betty Jean's taxable year 1960 not being before the Court), includable in the taxable income of Betty Jean, under the provisions of section 71 of the 1954 Code.

I agree that the label or characterization the parties place upon their transaction is not *binding* on the Court. *Piel* v. *Commissioner*, 340 F. 2d 887 (C.A. 2, 1965), affirming a Memorandum Opinion of this Court; *Merchants' L. & T. Co.* v. *Smietanka*, 255 U.S. 509. In my opinion, however, it is not to be entirely ignored, but is to be considered as evidence of the intention and understanding of the parties.

Respondent contends that the payments made by Taylor on the mortgage and home improvement loans were not payments in the nature of alimony and, accordingly, are not includable in the taxable income of Betty Jean or deductible by Taylor. In support of his contention, respondent relies upon *Seligmann* v. *Commissioner*, 207 F. 2d 489 (C.A. 7, 1953), reversing a Memorandum Opinion of this Court; *Florence H. Griffith*, 35 T.C. 882; and Rev. Rul. 58–52, 1958–1 C.B. 29, as modified by Rev. Rul. 62–38, 1962–1 C.B. 15.

The *Seligmann* and *Griffith* cases involve the payment of life insurance premiums by the husband and the revenue rulings referred to are based upon an analogy to such type cases. For a general discus-

sion of such cases, see 5 Mertens, Law of Federal Income Taxation, sec. 31A.05. For the most recent of such cases, see *Piel* v. *Commissioner, supra,* and *Kiesling* v. *United States,* 345 F. 2d 110 (C.A. 3, 1965), in which certiorari has been requested.

In general, the life insurance premium cases hold that where, under a divorce decree or written agreement incident thereto, a husband is required to pay premiums on life insurance policies assigned absolutely to his former wife and with respect to which she is the irrevocable beneficiary, such premiums are deductible by the husband. Where, however, the policy has not been assigned but the husband has retained ownership thereof and the wife's entitlement to the proceeds is contingent upon her surviving the husband, the premiums paid thereon by the husband are not includable in the taxable income of the wife or deductible as alimony by the husband.

In my opinion neither the life insurance premium cases nor the revenue rulings referred to are determinative of the issue presented herein. Apparently the majority of the Court are of the same view (see fn. 2 of the majority opinion), although much of the discussion in their opinion relates to the equities of the husband and wife in the property owned by them in joint survivorship.

The provisions of the agreement of June 27, 1960, requiring the petitioner Taylor to make the payments on the mortgage and home improvement loans immediately follow the provision that Betty Jean and the children are to continue to live in the residence of the parties located at 9216 Donerail. Both provisions are contained in the same paragraph of the agreement designated as "alimony." I think it clear from the provisions of the agreement that the payments on the loans were intended to assure the use and occupancy of the residence by the wife so long as she remained unmarried and until the children became of age or became self-supporting. If such payments had not been made it is reasonable to assume the mortgage would have been foreclosed and Betty Jean would have been compelled to secure residence elsewhere for herself and the children. In effect the loan payments in question were equivalent to what would have been reasonable rental paid by the husband on a similar residence for the use and occupancy of the wife and children. While there was no specific testimony as to the rental value of the residence, there was testimony that it was a three-bedroom house located in Valley Station, which is a suburb of Louisville. The mortgage loan placed on the house in 1958 was $10,550, and, considering the well-known policy of lending institutions, it is reasonably certain the loan did not represent the full value. Also, although the total cost of the garage and the storm door and window improvements is not shown, they unquestionably added to the value of the property. In my opinion the fair rental value was not less than the total amount of the monthly payments, and I would so find.

The right of possession given the wife under the terms of the agreement and divorce decree was a substantial present benefit which was secured and made possible by the loan payments. It is this *present economic benefit* which makes this case distinguishable from the life insurance premium cases where all the wife's rights under the policies of insurance were contingent or qualified. There was nothing contingent about this present benefit secured by the payments in question.

In my opinion the payments made by the husband on the mortgage and home improvement loans during the period June 27, 1960, to and including June 30, 1961, were payments in the nature of alimony and as such are deductible by Taylor and includable in the gross income of his former wife, Betty Jean. I would so hold.

The case of *James Parks Bradley*, 30 T.C. 701, referred to in both the majority and concurring opinions, does not, in my opinion, require a different holding. That case is distinguishable from the present case in many important respects. (1) The stated purpose of the agreement in the *Bradley* case was to settle the respective property rights of the parties with respect to both their separate and community property. (2) The agreement specifically stated it was "intended as a Property Settlement Agreement and to refer only to property rights." (3) Title to the residence involved was at all material times vested in the husband. (4) The husband had claimed the *fair rental value* of the residence and not the payments on the loan as alimony. (5) More important, the payments in question which were made in 1952, 1953, and 1954 were not made on the loan which existed in 1946, the date of the agreement and divorce decree under which the wife was given the right of occupancy; they were made on the last of three substantially increased loans made by the husband in 1947, 1948, and 1949, in contravention to the terms of the agreement of May 14, 1946.

The principal holding of the Court in the *Bradley* case, with which I agree, was that the stipulated fair rental value of the residence was not deductible as "periodic payments" or alimony. Cf. *Pappenheimer* v. *Allen*, 164 F. 2d 428, cited therein. I also agree, *on the basis of the facts there presented*, that the argument made by the petitioner therein that the payments made by him to reduce the encumbrance on the property were deductible as alimony was lacking in substance. The facts of the *Bradley* case were substantially different from those in the present case.

My conclusion that the entire amount of the loan payments is deductible as alimony would, of course, require an adjustment with respect to petitioner Taylor's claimed deductions for interest and taxes for the year 1960. He would not be entitled to a double deduction.

For the reasons discussed above, I respectfully dissent from the holding of the majority on the second issue.