WILLIAM H. BRODERSEN, JR., AND CLARICE M. BRODERSEN, PETITIONERS *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3471–70.   Filed December 20, 1971.

*John L. Palmer* and *Thomas P. Guszkowski*, for the petitioners.
*Robert F. Brunn*, for the respondent.

STERRETT, *Judge:* The respondent determined a deficiency in the Federal income tax of the petitioners of $216.45 for the taxable year ended December 31, 1966.

The only issue for decision is whether a premium paid by petitioner for insurance on his life, purchased pursuant to a divorce decree

---

and naming his former wife as owner-beneficiary, is deductible under section 215, IRC 1954.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

William H. Brodersen, Jr. (hereinafter referred to as petitioner), and Clarice M. Brodersen are husband and wife and their legal residence was Milwaukee, Wis., as of the date their petition was filed with the Tax Court. Their joint Federal income tax return for the calendar year 1966 was filed with the district director of internal revenue, at Milwaukee, Wis.

Petitioner and his former wife, Barbara Brodersen, now Barbara Warder (hereinafter referred to as Barbara), were divorced on August 6, 1965, in the Circuit Court of Waukesha County, State of Wisconsin. The judgment approved a stipulation between petitioner and Barbara as to a property settlement in lieu of alimony. The stipulation provided in part:

E. That Defendant [petitioner here] pay to the Plaintiff [Barbara] One Hundred Thirty Seven Thousand Dollars ($137,000.00) in the following manner:

(1) Upon the rendition of this judgment, Five Thousand Dollars ($5,000.00).

(2) Five Hundred Dollars ($500.00) per month payable by the 5th of each month commencing in the month following rendition of this judgment for one hundred thirty nine (139) consecutive months with a final payment on the one hundred fortieth (140th) month of Two Thousand Five Hundred Dollars ($2,500.00).

(3) Ten (10) payments of Six Thousand Dollars ($6,000.00) each, the first one payable on June 5, 1966 and the remaining nine (9) payments on June 5th during the succeeding nine (9) years.

Barbara, through her attorney, Donald Peterson (hereinafter referred to as Peterson), insisted that the required payments be secured in the event petitioner died before payment had been completed. The selection of an insurance policy as the means of furnishing the necessary security was made by petitioner and his attorney, Martin Browning (hereinafter referred to as Browning), who made the determination that it was the most economical method. With respect to the matter of insurance the property stipulation noted the following:

L. As soon as practicable after rendition of such judgment, the Plaintiff shall be awarded and Defendant shall be divested of all right, title and interest and the incidents of ownership in and to a policy or policies of declining term life insurance on the life of Defendant aggregating initially the face sum of One

---

[1] All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.

Hundred Twenty Five Thousand Dollars ($125,000.00) covering a term of not less than twelve years on which the Defendant shall pay the premiums without extension and shall be entitled to all dividends. Defendant shall cause the insurance company to send duplicate receipts of premium payments to Plaintiff at the address specified by her .

Petitioner chose the insurer, the particular type of policy, and the agent through whom the policy was acquired. In so doing, he obtained the appropriate application, but it was signed by Barbara as applicant. The application, in the section entitled "remarks," filled out by the agent, Charles Kleinschmidt, stated:

Prepare provision that applicant owner's approval is required to change or cancel this policy. Applicant is to have all rights and benefits and her estate is to be beneficiary, owner if she predeceases insured. Insured is required to purchase this policy to indemnify wife for amount stipulated as divorce settlement. * * *

Though Peterson investigated various types of term policies, neither he nor Barbara participated in the selection of the insurer, the type of policy, or the agent. They had no part in choosing the terms of the policy as this also was done solely by petitioner. Neither Barbara nor her attorney ever had possession of, or ever saw, the policy before or during the year in issue, and neither considered the annual premium part of the funds required to be paid in order to divide the property of the former spouses.

Pursuant to his obligation, petitioner obtained term life insurance Policy No. 28 827 401 on his life from the Prudential Insurance Co. of America. It was a 15-year decreasing-term policy issued on August 18, 1965. The gross annual premium was $555. The policy named Barbara as beneficiary with her estate as contingent beneficiary. The application, included within the policy, noted that the ownership of the policy rested with the applicant unless otherwise indicated, and any dividends payable would be applied against the annual premium. A rider attached to the policy sometime after its original issuance stated:

The policy is hereby amended at issue to provide that, subject to such limitations as may be hereinafter set forth, all legal incidents of ownership and control of the policy shall belong to the following Owner:

Barbara A. Brodersen, wife of the Insured, the estate of said wife,

and such Owner shall be entitled, during the lifetime of the Insured, without the consent and to the exclusion of any Beneficiary, to any benefit payable and any value obtainable under the policy and to the exercise of any rights and privileges conferred by the policy or allowed by the Company.

The policy contained a conversion privilege, which, though never exercised, permitted the owner to convert it from a decreasing-term policy to permanent whole life insurance; limited however to a mini-

mum coverage of $2,000 and a maximum of "80% of the amount which would have been payable under the present policy if death had occurred immediately prior to the conversion date." Barbara was unaware of the right of conversion, and even if she discovered such provision and desired to convert the policy, written consent of the petitioner was required by the issuing company. In addition, such conversion would result in an increase in premium unless substantially less than maximum coverage was selected. The stipulation contained no provision relating to convertibility or petitioner's obligation to pay an increased premium due to Barbara's conversion of the policy. Once converted the policy would contain provisions for dividend rights, cash surrender value, and loan value.

Petitioner, with the consent of Barbara, has twice had the amount of the insurance coverage reduced to an amount lower than the automatic decline built into the policy. Each such reduction resulted in a reduction of the premium payment required to be paid by petitioner to keep the term policy in force.

Petitioner paid a premium of $555 during 1966 and deducted it on his joint Federal income tax return for the year ended December 31, 1966. Barbara initially recognized the premium as income on her 1966 return, but subsequently filed a claim for refund denying such amount as income, which claim is still pending before respondent.

OPINION

Petitioner and Barbara were divorced on August 6, 1965. The judgement approved and adopted a property settlement denoted as a stipulation, which had been entered into by the parties in lieu of alimony. The stipulation contained a provision requiring petitioner to transfer to Barbara a $125,000 decreasing-term insurance policy, while at the same time paying the annual premiums. The sole question for our determination is whether the $555 premium paid in 1966 is deductible by petitioner under section 215, which states in part:

SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year.

It is evident from the above language that petitioner's right to deduct the premium payment hinges upon the includability of such payment in Barbara's income within the purview of section 71. Section 71(a) includes in the gross income of a divorced wife (1) periodic payments (2) received by her (3) in discharge of the husband's legal obligation (4) incurred under a divorce decree or settlement

agreement incident to such decree.[2] The question of deductibility in the instant case then turns on whether Barbara constructively received income by reason of the payment by the petitioner of the insurance premium.

Our research into the question of the appropriate tax treatment to be accorded a payment, pursuant to a property settlement, by a former husband of insurance premiums on his life reveals two distinct strains of cases reaching opposing results due to two separate factual conclusions deemed controlling. First, there are the cases which find governing the fact that the policy was acquired for security purposes. For example it has been said: "It is well established that premiums paid by a former husband on a policy of insurance which merely provides security for continued alimony or support payments to his divorced wife in the event of his death are not includible in the gross income of the wife as additional alimony." *Lilian Bond Smith,* 21 T.C. 353, 364 (1953). See also *F. Ellsworth Baker,* 17 T.C. 1610 (1952), affirmed this issue 205 F. 2d 369 (C.A. 2, 1953); *Halsey W. Taylor,* 16 T.C. 376 (1951); *William J. Gardner,* 14 T.C. 1445 (1950), affirmed per curiam 191 F. 2d 857 (C.A. 6, 1951); *Meyer Blumenthal,* 13 T.C. 28 (1949), affd. 183 F. 2d 15 (C.A. 3, 1950).

The second strain finds dispositive the fact that the wife is the owner and beneficiary of the policy: "It is difficult to see on what theory it could be successfully contended that the payments of insurance premiums * * * did not constitute [the wife's] income * * *. The policies in question were her property and all payments made were at her instigation for her account, and designed to redound to her benefit." *Anita Quinby Stewart,* 9 T.C. 195, 198 (1947). See also *Katharine T. Hyde,* 36 T.C. 507 (1961), affd. 301 F. 2d 279 (C.A. 2, 1962); *Weil v. Commissioner,* 240 F. 2d 584 (C.A. 2, 1957), affirming a Memorandum Opinion of this Court; *Lemuel Alexander Carmichael,* 14 T.C. 1356 (1950); *Estate of Boies C. Hart,* 11 T.C. 16 (1948).

Respondent naturally urges the applicability of the first line of cases, contending that the facts here present require a conclusion that the policy was acquired solely to secure the amounts due under the settlement stipulation between petitioner and Barbara. Petitioner, on the other hand and equally naturally, emphasizes the fact that Barbara was the owner of the policy and contends accordingly that the

---

[2] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

    (a) GENERAL RULE.—

        (1) DECREE OF DIVORCE * * *.—If a wife is divorced * * * from her husband under a decree of divorce * * * the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce * * *

premium payments must have redounded to her benefit, making said payments her income and deductible to him under the second line of cases.

At the outset we note our agreement with respondent that the policy in issue was purchased solely for security purposes. In support of this conclusion we emphasize the fact that a decreasing-term policy is involved here and that the amount payable upon death under the policy is reduced as the alimony obligation is fulfilled. Thus, in order to obtain any personal benefit Barbara would not only have to outlive petitioner but petitioner would have to die within a 12-year period.[3] It is clear then that the policy carried with it no independent financial advantage to Barbara. It added nothing directly to her resources but rather merely assured her of the receipt of the payments already due from her former husband under their stipulation of settlement.

Our agreement with the respondent on this point means that the factual determinations underlying the aforenoted two strains of cases coexist in this controversy, apparently for the first time. Faced with the Rubicon we opt for the applicability of the first line of cases and hold that the theory underlying the second line is inapposite where pure term insurance is involved.

The cases cited by petitioner involved whole life policies and we find the difference between such policies and term life policies highly significant. As owner of a whole life policy the wife is entitled to surrender it for its cash value, borrow on it, etc., thereby obtaining an additional economic benefit, over and above any agreed-upon alimony payments. With a term policy however, there is only a contingent right to obtain a fixed amount of cash at the death of the insured which at the best most affords the wife peace of mind in knowing her payments are secured. Such peace of mind does not provide an additional economic benefit. As the Court of Appeals for the Seventh Circuit in *Seligmann* v. *Commissioner*, 207 F. 2d 489, 494 (C.A. 7, 1953), reversing a Memorandum Opinion of this Court, stated:

we are unable to discern how it can be thought that petitioner realized a taxable economic gain during the years in question. Certainly, as noted, she received no cash, either actually or constructively, and it would appear equally certain that she received no property capable of measurement or ascertainment. The most that can be said is that the right which she acquired at the time the separation agreement was executed was preserved to her from year to year, including those here involved, by the husband's payment of the premiums on his life insurance policies which he was obligated to make. After the payments were made she had no different or greater right than she had before. * * * *Mere peace of mind or the*

---

[3] Though the policy had a 15-year life, it was reduced to correspond with the alimony owed. The alimony was payable over a 12-year period.

*satisfaction which stems from knowledge that protection may be of benefit in the future does not constitute taxable economic gain.* [Emphasis supplied.]

In addition, we note again that as a decreasing-term policy the amount payable upon death is reduced as the alimony obligation is fulfilled.

Petitioner points out, however, that the policy contained a provision which permitted the owner to convert it to whole life. Thus, argues petitioner, Barbara was entitled to obtain the additional benefits incident to such policy. Though this position may in most instances be correct, it is not appropriate in this case. We noted above that Barbara was unfamiliar with the provisions of the policy and therefore was unaware of the conversion feature. Further the privilege of convertibility required the owner to surrender the policy and as the facts indicate Barbara did not have possession of the policy. Finally, the issuing company required written approval of petitioner if Barbara wished to convert the policy. It therefore seems manifest that though the policy contained a conversion privilege, this privilege was not bargained for and did not in actual fact bestow upon Barbara any additional economic benefit.

Petitioner directs our attention to the Second Circuit's opinion in *Stevens* v. *Commissioner*, 439 F. 2d 69 (C.A. 2, 1971), reversing a Memorandum Opinion of this Court, wherein the Court of Appeals held that the premiums paid on a whole life insurance policy acquired as security for the payment of alimony owned by the wife were taxable to the wife. Particular attention is placed on that portion of the opinion where the court said:

To deny constructive receipt of benefit whenever the wife's interest in the proceeds is contingent on her surviving her former spouse is to presume that an insurance policy's only value to the beneficiary lies in receipt of the face amount upon death of the insured. If this analysis were correct, premiums paid on a term insurance policy could never qualify as alimony payments because the protection of term insurance to an irrevocable beneficiary extends only for a specified period rather than over the life of the insured. See Note, Alimony Taxation of Indirect Benefits: A Critique and a Proposal, 66 Col. L. Rev. 1118, 1132-35 (1966). Rather the contingencies which will deny deductibility are those which might operate to thwart the wife's receipt of the economic benefit the premium payments conferred, that is, the protection, during a limited term, of the wife's right to receive alimony over the full alimony period. [439 F. 2d at 72-73. Footnote omitted.]

This language petitioner maintains is dispositive of the question presented in the instant case. We cannot agree. The present case is distinguishable on its facts. In *Stevens*, the insurance policy acquired on behalf of the wife was a whole life policy, which as previously noted permitted her to receive certain additional benefits. Therefore, even though the policy was acquired as security the wife, in substance, received additional alimony. Such additional benefits were not present

in the instant case. Further, the policy acquired in the *Stevens* case was in the possession of the wife which afforded her the opportunity of discovering the available benefits. In the present case the petitioner was in possession of the policy and Barbara was unfamiliar with the provisions contained therein.

Finally, we note that the reference to term insurance is clearly dictum and we respectfully decline to follow it for reasons heretofore set forth. We maintain our view that the protection afforded a wife through the purchase of a term-life insurance policy on her former husband's life does not qualify as an economic benefit to the wife sufficient to create taxable income. The implication in the dictum to the contrary goes against the authority previously cited.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

TANNENWALD, *J.*, dissenting: There is no escape from the fact that what the petitioner's wife bargained for was a *secured* obligation to make the payments which qualify under the statute. That a secured obligation has a value beyond that of an unsecured obligation similarly is beyond question. That increased value, in a very real sense, provided an indefeasible economic benefit to petitioner's wife and the amount of the premium paid is an appropriate measure of that value.[1] See *Stevens* v. *Commissioner*, 439 F. 2d 69 (C.A. 2, 1971), reversing a Memorandum Opinion of this Court. The fact that petitioner's wife would not receive additional money beyond the amount of the direct payments which petitioner was obligated to pay is beside the point. Given the bargaining stance of the parties, it is clear that the insurance was an integral part of the provision made for the wife's support. Consequently, in my opinion, the premiums should be treated as part and parcel of petitioner's obligation arising out of the marital relationship within the meaning of sections 71 and 215. Compare *Estate of Robert Rodger Glen*, 45 T.C. 323, 344 (1966); *Robert Lehman*, 17 T.C. 652 (1951); *Edward B. McLean*, 11 T.C. 543 (1948); sec. 1.71–1(b) (4), Income Tax Regs. See Raum, *J.*, dissenting, in *Florence H. Griffith*, 35 T.C. 882, 894 (1961).

In the instant case, the petitioner's wife or her estate was the sole owner of the totality of rights and benefits provided by the policy. Neither her death nor her remarriage operated to defeat that ownership.

---

[1] No suggestion has been made herein that a different measure of that value, i.e., the cost of 1-year term insurance, might be a more appropriate measure. See Note, "Alimony Taxation of Indirect Benefits: A Critique and a Proposal," 66 Col. L. Rev. 1118, 1132–1138 (1966).

The foregoing circumstances serve to distinguish the decided cases in the area involved herein. In some of those cases, the husband retained an interest in the policy itself or its proceeds. In some, persons other than the wife would benefit from the insurance. In still others, the wife's interest in the insurance ceased upon her death or remarriage.[2] Admittedly, the opinions in many of these cases contain language which tends to support the conclusion of the majority. But, in view of the distinguishing factors previously outlined, I find no need to pick my way through the confusion which such language has created. See Note, "Alimony Taxation of Indirect Benefits: A Critique and a Proposal," 66 Col. L. Rev. 1118 *et seq.* (1966).

I am not unmindful of the chilling effect of *Seligmann* v. *Commissioner*, 207 F. 2d 489 (C.A. 7, 1953), in light of the fact that an appeal herein would be to the Seventh Circuit Court of Appeals. See *Jack E. Golsen*, 54 T.C. 742 (1970), affd. 445 F. 2d 985 (C.A. 10, 1971). But in *Seligmann*, the wife's interest in the insurance proceeds was contingent on her surviving her husband and not remarrying and the children of the marriage had a contingent interest in such proceeds. Nothing in *Golsen* requires us to speculate whether the Seventh Circuit would consider these distinguishing factors irrelevant if and when the case herein is presented to it.

I would hold for petitioner.

RAUM, *J.*, agrees with this dissent.

---

[2] Additionally, many of the cases in this area involving whole life insurance fail to differentiate between the accumulating investment and annual protection elements of such policies, thereby denying any deduction to the husband who retains some interest in the former even though the rights attributable to the latter are irrevocably vested in the wife.